Charlotte **JOHNSTON**, Plaintiff,

v.

**AMAX COAL COMPANY**, Defendant.

No. EV 93–0015 C M/H.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 8, 1997.

Virginia M. O'Leary, O'Leary & Associates, Oakland City, IN, for Plaintiff.

Byron L. Myers, Paul H. Sinclair, Ice Miller Donadio & Ryan, Indianapolis, IN, for Defendant.

## ORDER

McKINNEY, District Judge.

The instant case has followed a winding path to reach its current procedural setting. Initially, the matter was assigned to Judge Brooks of this Court's Evansville Division. On July 6, 1994, Defendant Amax Coal Company, Inc. ("Amax" or "Company") filed its motion for summary judgment, which Judge Brooks granted in an order dated August 11, 1995 ("August Order"). Subsequently, Plaintiff Charlotte Johnston filed a motion to reconsider coupled with a motion to recuse Judge Brooks' law clerk. Essentially, Judge Brooks had made the parties aware that one of his clerks, Kevin Patmore, had rendered substantial assistance in the behind-the-scenes analysis of the summary judgment

motion. In an article appearing in the October 31, 1994 edition of the *Evansville Press,* this same clerk made certain comments regarding the admission of women to the Citadel. Because Patmore's comments reflected a negative view toward allowing women in a previously all-male institution—a situation somewhat analogous to Johnston's claim against Amax—Johnston feared that Patmore's personal views might have tainted the Court's analysis of the summary judgment materials. Accordingly, she requested that Judge Brooks personally reconsider Amax's motion. In an order dated August 30, 1996, Judge Brooks granted Johnston's motion to reconsider but refused her request to recuse Patmore from this reconsideration. Judge Brooks has since retired, and the matter has been reassigned to this Court.

This Court has reviewed the August Order as well as the briefs and evidentiary materials the parties submitted in connection with that motion. These briefs are not entirely clear concerning which specific claims Johnston intended to raise against Amax. The complaint itself includes but two general counts. In Count I, Johnston alleged that Amax violated Title VII of the Civil Rights Act of 1964 ("Title VII") by discriminating against her on the basis of her gender. In Count I, she alleged that Amax violated the Age Discrimination in Employment Act of 1967 ("ADEA") by discriminating against her on the basis of her age.

According to the brief in opposition to Amax's motion for summary judgment, Johnston intended to state three separate claims through her complaint. First, she contends that Amax violated Title VII and the ADEA by terminating her on the basis of her gender and her age. Second, she asserts that the Company violated Title VII-but not the ADEA-by refusing to rehire her on the basis of her gender. Third, she maintains that, throughout her employment with Amax, the Company has engaged in conduct which constitutes a "continuing violation" of Title VII-but not the ADEA. After stating the standard applicable to motions for summary judgment, this Court shall examine each of these three claims in turn.

## I. SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986); *see United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1267–68 (7th Cir. 1990), *cert. denied,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir.1996). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex Corp.,*

477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *Estate of Cole v. Fromm,* 94 F.3d 254, 257 (7th Cir.1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir.1996). Irrelevant or unnecessary facts do not deter summary judgment-even when in dispute. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir.1996). Cases in which the parties agree that no genuine issues of material facts are in dispute and that the contested issues are purely legal ones are especially appropriate for summary judgment. *Amax Coal Co. v. United Mine Workers of America,* 92 F.3d 571, 574 (7th Cir.1996).

■ On certain occasions, the Seventh Circuit has suggested that a court should approach a motion for summary judgment in an employment discrimination case with a particular degree of caution. *See, e.g., Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993); *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). Prior language of the Court implied that summary judgment might be less appropriate in this context based upon the presence of issues of motive and intent. *Holland,* 883 F.2d at 1312. However, as the Seventh Circuit has recently emphasized, these cases do not establish a heightened summary judgment standard for employment-related cases. Instead, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1396 (7th Cir.1997). Even when discriminatory intent is at issue, summary judgment is appropriate when the nonmovant presents no evidence to indicate motive or intent in support of her position. *See Holland,* 883 F.2d at 1312. Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support. *Cliff v. Board of School Comm'rs,* 42 F.3d 403, 408 (7th Cir.1994). Guided by these standards, this Court shall now reconsider Amax's motion for summary judgment.

## II. JOHNSTON'S TITLE VII AND ADEA CLAIMS RELATING TO HER TERMINATION

■ The primary allegations in this action relate to Johnston's termination. According to Johnston, Amax terminated her based upon her gender and her age, thereby violating both Title VII [1] and the ADEA.[2] To prevail in a Title VII claim or an ADEA claim, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against her. *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 681 (7th Cir.1996) (ADEA case); *Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied,* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994) (Title VII case). The plaintiff may satisfy this burden in either of two ways. First, she may pres-

---

1. In relevant part, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e–2(a)(1).

2. In relevant part, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1).

ent direct proof of discriminatory intent by utilizing direct or circumstantial evidence. *Weisbrot,* 79 F.3d at 680, 993 F.2d at 1261. Second, she may follow the indirect, burden-shifting method of proof originally articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Weisbrot,* 79 F.3d at 680; *Hong,* 993 F.2d at 1261.

As an initial note, Johnston has taken conflicting positions regarding which method of proof she intends to pursue. In her response to Amax's motion for summary judgment, she proceeded immediately to the *McDonnell Douglas* framework. After quickly stating an overview of the analysis, she provided detailed discussion of each step of the framework. At no time did she discuss direct evidence of discrimination. However, in the brief in support of the motion to reconsider, Johnston challenged Judge Brooks' statement in the August Order that "Plaintiff does not offer direct proof of discrimination." The brief appears to imply that she had offered direct proof which Judge Brooks had ignored.

 For purposes of clarity, this Court would simply highlight the difference between direct and indirect evidence. Under Title VII or the ADEA, the term direct evidence refers to "smoking gun" evidence, such as an employer's explicit statement that "we are firing you because you are a woman." Of course, courts rarely see this type of remark Accordingly, the courts allow plaintiffs to prove discrimination through indirect evidence, such as a showing that a specific prima facie case exists and evidence that an employer has given a false reason for its action. Upon review of the plaintiff's briefs and evidentiary materials, this Court has not identified any statements by Amax which constitute direct evidence. As a result, this Court shall analyze Johnston's claim under

the principles of *McDonnell Douglas*-as the plaintiff herself has done.

 Under this analytical framework, the Title VII or ADEA plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Hicks,* 509 U.S. at 506, 113 S.Ct. at 2746–47; *Weisbrot,* 79 F.3d at 681, 993 F.2d at 1261. By establishing a prima facie case, the plaintiff " 'creates a presumption that the employer unlawfully discriminated against the employee.' " *Hicks,* 509 U.S. at 506, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094). To rebut this presumption, the defendant must set forth admissible evidence "which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 507, 101 S.Ct. at 1226 (emphasis in original). If the defendant successfully articulates " 'a legitimate, nondiscriminatory reason" for its actions, then " 'the presumption raised by the prima facie case is rebutted.' " *Id.* (quoting *Burdine,* 450 U.S. at 254, 255, 101 S.Ct. at 1094–95). The burden of production then shifts back to the plaintiff, who must show that the seemingly legitimate reasons are in fact a pretext for discrimination. *Id.* at 507–08, 101 S.Ct. at 1226–27. At every stage of this analysis, as the Supreme Court has noted, the plaintiff retains the ultimate burden of persuasion on the issue of intentional discrimination. *Id.* at 508, 101 S.Ct. at 1226–27.

 Turning, then, to the present case, Johnston bears the initial burden of introducing evidence sufficient to support a prima facie case of discrimination. *Hicks,* 509 U.S. at 506, 113 S.Ct. at 2746–47. To establish a prima facie case under Title VII, Johnston must show "that (1) she belongs to some protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer treated similarly-situated employees outside her classification more favorably." *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994).[3] Similarly, to raise a prima facie

---

3. Over the years, the Seventh Circuit has also employed other slightly different variations of the fourth factor of the Title VII prima facie case.

*See, e.g., Kirk v. Federal Property Mgt. Corp.,* 22 F.3d 135, 138 (7th Cir.1994) (demanding proof that the employer had actually hired a replace-

case under the ADEA, she must show "(1) she was in the protected age group; (2) she was performing her job satisfactorily or was qualified for the job for which she applied; (3) she was discharged, not hired, not promoted, etc.; and (4) younger employees were treated more favorably." *Weisbrot,* 79 F.3d at 681. Amax does not appear to contest whether Johnston has made a sufficient showing under each of these standards, so this Court shall assume without deciding that Johnston has met her requirement to present a prima facie case.

At this point, the burden shifts. Amax has advanced a relatively straightforward explanation for terminating Johnston. During the late 1980's, the Company began to utilize new mining methods and technology. This increased the mine's efficiency and resulted in a need to reduce the number of employees. Amax accomplished this workforce reduction through three separate layoffs: October of 1988, May of 1990, and February of 1991.[4] In each of these layoffs, the Company considered particular criteria in order to select employees for termination.[5] Johnston lost her job during the 1991 workforce reduction.

■ In her briefs, Johnston has leveled numerous arguments against the validity of Amax's decision to terminate her. Because she possessed stronger qualifications than many employees retained by the company, she argues, the Company's explanation is not legitimate, and Amax has failed to meet its burden under the second stage of the *McDonnell Douglas* analysis. This argument misstates the governing authority. In the second stage of the inquiry, a court does not closely scrutinize an employer's explanation to determine its accuracy. In this stage,

the defendant need only articulate an explanation for its conduct "which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747 (emphasis in original). The Seventh Circuit has noted that, "for a reason to be 'legitimate,' in the sense of sufficient to rebut a prima facie case, it need not be a good or sympathetic justification for what the employer did; it need only be a nondiscriminatory and, if true, (even if short-sighted or ultimately a product of poor business judgment) merely explain why the challenged action was taken." *Timm v. Mead Corp.,* 32 F.3d 273, 275 (7th Cir.1994). Amax has explained that it terminated Johnston as part of a reduction in force, through which it retained its best-qualified employees and terminated less-qualified employees. This satisfies Amax's obligation to articulate a " 'legitimate, nondiscriminatory reason' " for its action.

■ Once the defendant has proffered a permissible reason for its employment action, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Hicks,* 509 U.S. at 510, 113 S.Ct. at 2748. At this stage, the plaintiff has the opportunity to show that the defendant's seemingly legitimate reason did not actually motivate the action but an impermissible factor-such as race or age-did. *Id.* at 507–08, 113 S.Ct. at 2747–48. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.* at 511, 113 S.Ct. at 2749. However, such disbelief does not compel the court

---

ment of a different race); *Hong,* 993 F.2d at 1261 (requiring Title VII plaintiff to show that "her employer sought a replacement for her"). While these varying approaches attempt to account for the subtle distinctions among Title VII cases, *see McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, the Seventh Circuit does still allow a plaintiff to establish a prima facie case by showing that the employer treated other similarly-situated employees outside her classification more favorably. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994).

4. Amax conducted another workforce reduction in August of 1992, but the record offers little discussion of this action-presumably because it occurred after Amax terminated Johnston.

5. Specifically, Amax considered the following factors in conjunction with the 1991 layoffs: the employees' ability to perform more than one function; their educational backgrounds; their value to the Company in terms of the specific area in which the employees worked; their versatility; their prior work records; and their performance appraisals for the years of 1988, 1989, and 1990.

to infer the ultimate fact of discrimination. *Id.* Instead, a plaintiff must show *"both* that the reason was false, *and* that discrimination was the real reason." *Id.* at 515, 113 S.Ct. at 2752 (emphasis in original). Alternatively stated, "the plaintiff is left to unmask, if he can, the reasons proffered by the employer as fake. *Beyond this,* he must also prove that the true reason for his firing was discriminatory." *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1117–18 (7th Cir.1993).

■■■ When attempting to refute a defendant's explanation as pretextual, the plaintiff must " 'focus on the specific reasons' " the defendant advanced to explain the employment action. *Hughes,* 20 F.3d at 747 (*quoting Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 (7th Cir.1989)); *Lenoir,* 13 F.3d at 1133. The plaintiff "may establish pretext by proving evidence either that the proffered reasons do not deserve credence or that discriminatory intent more likely motivated the action." *Cliff,* 42 F.3d at 412.[6] In evaluating the employer's explanation, a court must "keep in mind, however, that there is a fine line between evidence that appropriately challenges the employee's proffered reasons as being unworthy of credence and evidence that the employer made a mistake or a bad business judgment." *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994). As slated by the Seventh Circuit, a court does " 'not sit as a super-personnel department that reexamines an entity's business decisions." *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988) (*quoting Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986). No matter how mistaken, misguided, or even medieval a company's employment practices might appear, the court must limit its inquiry to whether the employer offered an honest explanation for its decision. *Id.* "Once Defendant has presented a reasonable explanation for Plaintiff's treatment, if Plaintiff cannot then show any evidence of pretext, the

Defendant may properly be granted summary judgment." *Lenoir* 13 F.3d at 1133.

■■■ To demonstrate pretext in the present case, Johnston has presented a variety of arguments. First, she contends that Amax did not actually rely upon the criteria they now cite in support of the decision to terminate her. Instead, she has pointed to a January, 1991 memorandum Joan Carpenter seat to Brad Berger. This memorandum makes certain observations about Johnston's performance, and Johnston argues that the memorandum states an exhaustive list of the reasons she lost her job. She characterizes the Company's list of factors it considered as nothing more than a post-hoc rationalization.

This Court finds Johnston's argument a bit puzzling. She has simply pointed to a single document and asked this Court to infer that the document states the reason for her termination Although the Company also discharged other employees, she has not explained how the termination decisions interrelated. Did Amax utilize the more sophisticated evaluation process for other employees and make the decision about Johnston based upon less comprehensive data, or do similar brief notes exist pertaining to the other employees as well? Johnston has not answered these questions. The mere existence of this document, without additional evidentiary support, does not support an inference that the Company considered nothing else in its termination decision

Even if this document were the basis for the decision to terminate Johnston, however, this Court does not see how the document would assist her in showing that she lost her job due to discrimination. In fact, the document seems to hinder her discrimination claim. In what Johnston refers to as "a near contemporaneous recording of the rationale" behind her termination, the Company states that she scored low in certain performance appraisals and that she was not versatile. The memorandum makes no reference to age or gender. Apparently, Johnston wants this

---

**6.** The Seventh Circuit recently noted:

An employee may establish pretext by proving one of the following: "(1) [d]efendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3) at least the

reason stated was insufficient to warrant the discharge."
*Hughes,* 20 F.3d at 747 (*Quoting Lenoir* 13 F.3d at 1133).

Court to make two inferences. First, she asks the Court to ignore the reasons cited by Amax's summary judgment materials and to focus instead on the memorandum; next, she attempts to impugn the accuracy of the reasons cited in the memorandum and states that, because those reasons are not supported by fact, the real reason for the decision must have been discrimination. Plainly, the second inference does not necessarily flow from the first. More importantly, the accuracy of the Company's conclusions about Johnston's performance is not the subject of this litigation. At best, Johnston's observations about the accuracy of Amax's internal memorandum suggest that Amax made an incorrect business decision. As recently noted by the Seventh Circuit, however, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996). To defeat the motion for summary judgment, Johnston must supply additional evidence demonstrating that the real reason for the decision was discrimination on the basis of age or gender.

As a second argument relating to the pretext question, Johnston has pointed to her own deposition testimony relating to her performance and versatility and comparing herself to other Amax employees who were not terminated. Stated simply, these statements have little evidentiary value in the context of the present motion. A litigant cannot defeat a motion for summary judgment by just pointing to self-allegations without evidentiary support. *Cliff*, 42 F.3d at 408. Johnston must offer more than her own subjective—and unsupported—observations to evince a genuine issue of material fact. In the present case, Amax has explained that it based its employment decision on several specific criteria. Johnston could have presented a factual comparison pertaining to all of these factors and demonstrated that, based upon all the factors, she was better qualified than other individuals who retained their jobs. She did not do this. Instead, she provided her own conclusory statements comparing her ability to others' abilities. This evidence falls well short of demonstrating factual issues necessitating trial. *See Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 481 (7th Cir.1995) (noting that a plaintiff's subjective belief that she was more qualified than other employees does not demonstrate that the employer's evaluation of her was a pretext for discrimination).

When Johnston did cite specific evidence, however, she did not conduct a thorough enough analysis to meet her burden, either. Basically, Johnston would look to a particular criterion cited by Amax in support of its decision to terminate her. She would then cite evidence demonstrating that, with regard to that specific criterion, she scored higher than some other Amax employee who kept his job after the termination. The flaw in Johnston's reasoning is obvious. She needed to examine more than just an isolated factor or two. Amax identified a list of several factors it considered in reaching its decision; Johnston should have taken this complete list and demonstrated that, with regard to all—or at least most—of the factors, she fared better than employees whom the Company did not terminate. Such evidence would have gone a long way toward demonstrating that Amax advanced a file reason for its employment decision. Absent this type of evidence, this Court cannot conclude that the Company's reason for terminating Johnston was pretextual-let alone conclude that the reason was a pretext for discrimination.

▮ Finally, Johnston has relied upon statistical arguments. According to Johnston, Amax terminated a disproportionate number of employees over the age of forty. Moreover, she notes that, as she was the only female section supervisor, all of the nonmales in that position lost their jobs. From this data, she asks this Court to infer that illegal discrimination occurred.

The statistical evidence cited by Johnston has absolutely no relevance in this action. "We have held statistics are improper vehicles to prove discrimination in disparate treatment (as opposed to disparate impact) cases." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir.1997) (citing *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253 n. 8 (7th Cir.1990)). "Indeed, 'standing virtually alone, as they are in this case, statistics

cannot establish a case of individual disparate treatment.'" *Id.* (quoting *Gilty,* 919 F.2d at 1253 n. 8). Statistics can play a significant role in certain types of discrimination actions. Of course, cases involving disparate impact typically focus upon statistical evidence. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 2784–85, 101 L.Ed.2d 827 (1988); *Equal Employment Opportunity Comm'n v. O & G Spring and Wire Forms Specialty,* 38 F.3d 872, 876 (7th Cir.1994); *Shidaker v. Tisch,* 833 F.2d 627, 630–31 (7th Cir.1986). In addition, a plaintiff may rely upon statistical evidence in a disparate treatment pattern and practice case. *Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768, (1977); *Equal Employment Opportunity Comm'n v. Chicago Miniature Lamp Works,* 947 F.2d 292, 297 (7th Cir. 1991).

These legal principles do not assist Johnston for a variety of reasons. Most importantly, she has pursued this action under a conventional disparate treatment theory. She has alleged that Amax discriminated against her individually on the basis of her gender and her age. She has not presented any allegations of disparate impact. She has discussed how she suffered from a personal pattern and practice of discrimination, yet this appears to be a separate theory from her termination claim.[7] As noted above, statistical evidence has no relevance in individual disparate treatment cases. Johnston may not rely upon mere statistics to show she lost her job on the basis of her age or her gender.

■ Even if Johnston had stated her claim under a pattern or practice theory or as a disparate impact claim, her statistical evidence would still offer her no assistance. When admissible, statistical data is generally used to establish a prima facie case—not to show pretext. *See, e.g., Chicago Miniature,* 947 F.2d at 297 ("A prima facie case for a pattern or practice of disparate treatment

can be established by statistical evidence demonstrating substantial disparities in the application of employment actions as to minorities ...." (internal quotations omitted). In the present case, Johnston has already established her prima facie case, so she has passed the point in the analysis where statistics might have assisted her.

■ More importantly, Johnston has not offered sufficient information for this Court to consider in evaluating her statistical arguments. As the Supreme Court emphasized in *Johnson v. Transportation Agency of Santa Clara,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), a court must look to the percentage of minorities in the relevant labor group to identify the appropriate statistical comparison. "Determining the relevant labor market is an essential step in determining whether there are any statistically significant deviations between the market and the employer's hiring patterns." *O & G Spring and Wire,* 38 F.3d at 876–77. In the present case, Johnston has supplied evidence that she was the only female section supervisor, that she lost her job, and that many of the other section supervisors who lost their jobs were forty years of age or older. However, she has not identified the relevant labor group for purposes of comparison. This Court cannot determine what section of the labor force is eligible for promotion to section supervisor. Because the record does not give sufficient information for this Court to make the appropriate statistical comparison, Johnston's statistical data does not evince a genuine issue of material fact.

In the August Order, Judge Brooks remarked that, "although the Plaintiff has presented a prima facie case of sex discrimination, she has failed to come forth with any evidence sufficient to rebut the nondiscriminatory reasons for her layoff." Similarly, Judge Brooks observed that Johnston had not shown "that the legitimate nondiscrimi-

---

7. In her own discussion of her claims, Johnston has treated her termination claim as a straightforward disparate treatment claim. In addition, she has pointed to several distinct episodes of the Company's conduct and alleged that these acts represented a "continuing violation" of Title VII which culminated in her dismissal and in the

Company's refusal to rehire her. Given the manner in which Johnston has outlined her theory of her case, it appears that she views these two claims as two distinct entities. She has pleaded her termination claim as a disparate treatment claim. This Court shall treat it as such.

natory reason offered by the Defendant is a pretext for [age] discrimination." Upon reconsideration of the parties' briefs and the accompanying evidentiary materials, this Court agrees with Judge Brooks' conclusions regarding Johnston's allegations of gender and age discrimination in the decision to terminate her. Summary judgment shall be granted in favor of Amax on these two claims.

### III. JOHNSTON'S TITLE VII CLAIM RELATING TO THE DECISION NOT TO REHIRE HER

As the second cause of action in her complaint, Johnston has alleged that Amax violated Title VII by refusing to rehire her after her termination in 1991. She has not alleged that this refusal violated the ADEA. As noted above regarding Johnston's termination claims, she may employ either the direct or indirect method of proof to show that the refusal to rehire her violated Title VII. Once again, Johnston has not supplied the type of "smoking gun" proof contemplated by the term direct evidence, and she has instead elected to rely upon indirect method of proof.

The *McDonnell Douglas* framework operates the same way in refusal to rehire cases as it does in termination cases. After the plaintiff has presented a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory reason for its action, at which time the plaintiff must demonstrate that the employer's reason is, in fact, a pretext for discrimination. *See Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994) (discussing *McDonnell Douglas* framework in context of failure to rehire claim under the ADEA). Demonstrating a prima facie case requires proof "that the plaintiff is a member of a protected group, that the plaintiff applied for and was qualified for the position sought, that the defendant rejected the plaintiff for the position, and that the defendant hired or continued to

seek a person whose [gender] was different from that of the plaintiff's but whose qualifications were similar or less than those of the plaintiff." *Von Zuckerstein v. Argonne Nat. Lab.*, 984 F.2d 1467, 1475 (7th Cir.1993).

In the instant case, Amax filled numerous positions after terminating Johnston in 1991; however, it is not entirely clear how many of these positions Johnston sought to fill. Around the time of her termination, Johnston was considered for a different job with the company—the scale technician position. The parties have offered somewhat different descriptions of what happened;[8] however, the undisputed fact is that Johnston did not receive this position. Subsequently, Amax hired thirteen section supervisors, typically to replace section supervisors who retired or who left their positions for one reason or another. The facts do not indicate whether Johnston sought any of these positions or whether the company considered her for them. For present purposes, this Court shall simply assume without deciding that Johnston has demonstrated a prima facie case with regard to each of these positions.

At this point, Amax must supply a legitimate, nondiscriminatory reason for its decision not to hire Johnston. Amax has explained that it passed over Johnston for the initial opening as scale technician based upon questions relating to her attitude. As an additional note, Amax has maintained, and Johnston has not disputed, that at the time the Company refused to give her this position, she made a crass parting comment—a comment which might have affected her future opportunities to obtain re-employment with the Company.

In fact, though, the Company has cited different qualifications in support of its decision not to rehire Johnston—particularly for the section supervisor positions. According to Amax, the Company preferred to hire individuals with a broad range of skills for

---

**8.** Johnston has alleged that she was offered the position and accepted it before Amax rescinded the offer, Amax has asserted that it merely considered Johnston for the position but ultimately decided not to offer it to her based on numerous different reasons. Johnston has not stated a breach of contract claim against the Company but relies solely upon Title VII for a remedy for

this injury. Because the analysis of her Title VII claim would remain the same under either theory (if she had gotten an offer which was later rescinded, the claim could be cognizable as a termination claim), the question of whether Amax actually made her an offer does not present any genuine issues of material fact.

these positions. Amax primarily sought individuals with engineering degrees or other degrees, and the Company continued to hire individuals with substantial prior experience in coal production. This explanation satisfies the Company's burden to enunciate a nondiscriminatory reason for not rehiring Johnston; now, the burden shifts back to Johnston to demonstrate that this explanation is, in fact, a pretext for discrimination.

█ Once again, Johnston has opted to rely upon her subjective characterization of her own abilities rather than supply an objective comparison of her qualifications and the qualifications of the individuals hired by the Company. Johnston could have shown pretext by showing she had better qualifications for specific openings than the individuals hired for those openings based upon the qualifications emphasized by the Company. She has not done so with regard to even one individual hired. Instead, she has relied upon unsupported assertions that she was more qualified and should have been hired. For the same reason these subjective arguments filed to demonstrate pretext regarding the termination claim, they fail to demonstrate pretext regarding the failure to rehire claim.

█ Johnston has also questioned the emphasis Amax placed upon experience. According to her, it is duplicitous for the Company to say that it did not consider experience when making its termination decisions but did consider experience when deciding on new hires. This reasoning does not account for the difficulty which impacts employment decisions. In deciding who to hire, the Company sought specific skills to fill specific needs. That it did not consider the same skills when making termination decisions simply does not show pretext.

Next, Johnston has contended that she possessed enough experience that she should have been considered for the various openings. She did have experience in Amax's Wabash mine, yet she did not possess the type of experience the Company has explained that it sought for the section supervisors. As such, she has not shown that Amax has advanced a false explanation for its decision not to rehire her-let alone that the explanation is, in fact, a pretext for discrimination.

Finally, Johnston has claimed that the Company's decision only to hire individuals with significant experience would have an adverse impact upon women. However, she has filed this claim under a theory of disparate treatment rather than disparate impact. This argument simply does not advance her cause. Accordingly, this Court concludes that Johnston has not imputed Amax's legitimate, nondiscriminatory explanation for its decision not to rehire her as a pretext for discrimination. Therefore, this Court believes summary judgment in favor of the Company is appropriate on this claim as well.

## IV. JOHNSTON'S "CONTINUING VIOLATION" CLAIM

The remaining components of Johnston's complaint have presented significant difficulties for Amax and for Judge Brooks. Essentially, the complaint itself included description of several incidents of gender discrimination predating Johnston's termination. The complaint itself did not clearly explain the purpose of these factual allegations. In the brief in support of the motion for summary judgment, Amax treated some of these allegations as separate Title VII claims. Judge Brooks followed the same course.

This Court only finds one claim in all of the remaining factual allegations. Essentially, Johnston has alleged that Amax has committed a continuing violation of Title VII which dates back to the mid-1980's. Johnston alternately refers to this claim as a "personal pattern and practice" claim Through this claim, she seeks a remedy for discriminatory pay she received while in Amax's employ. Although her complaint refers to the hostile work environment she tolerated, she does not premise a gender discrimination claim upon this legal theory. Moreover, as Johnston stated explicitly in her brief, "[t]he fact that Plaintiff was denied training, promotions and coal loading assignments, as well as the fact that she endured sexually offensive comments and was not recognized for accomplishments, are not intend-

ed to state separate causes of action for relief." Accordingly, the only claim Johnston has—aside from the two claims previously discussed—is a continuing violation claim.

As a general matter, the continuing violation doctrine " 'allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period.' " *Equal Employment Opportunity Comm'n v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 969 (7th Cir.1996) (quoting *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992)); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439 (7th Cir.1994). As a result, this theory requires the plaintiff to identify an act of discrimination within the appropriate limitation period. *See Walner & Assocs.*, 91 F.3d at 969. In other words, "there mist be a present violation to complain about, not just the persisting effects of past discrimination." *Jones v. Merchants Nat. Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir.1994). Johnston has attempted to link certain instances of Amax's earlier conduct with her termination or, alternately, with the refusal to rehire her. However, this Court has already concluded that neither of then later episodes violated Title VII or the ADEA. Because Johnston has not identified a discriminatory act which occurred within the appropriate limitations period, her continuing violation claim fails as a matter of law.

### CONCLUSION

For the reasons stated above, this Court now concludes that Judge Brooks reached the proper conclusion when he granted Defendant Amax's motion for summary judgment in this matter. As a result, this Court now once again orders that summary judgment be **GRANTED** in favor of Defendant Amax and against Plaintiff Johnston.