916 F.2d 1261
 54 Fair Empl.Prac.Cas. 430,
54 Empl. Prac. Dec. P 40,334
UNITED ASSOCIATION OF BLACK LANDSCAPERS, Eddie Martin,
Thomas H. Wynn, Jr., Harold Burris, Lloyd
Mayweather, Jose Rosales, Charles
Burton, Rufus Powell, John
Doe, and Jane Doe,
Plaintiffs-
Appellants,
v.
CITY OF MILWAUKEE, Department of Public Works, Bureau of
Forestry, of the City of Milwaukee, Robert Skiera, City
Forester for the City of Milwaukee, Richard Meyer, Assistant
City Forester for the City of Milwaukee, John Norquist,
Mayor for the City of Milwaukee, E. Frank Bridges,
President, Board of City Service Commissioners of the City
of Milwaukee, and City Service Commission of the City of
Milwaukee, Defendants-Appellees.
 No. 90-1430.
 United States Court of Appeals,
Seventh Circuit.
 Argued July 11, 1990.
Decided Oct. 29, 1990.
 
 Robert Sutton, Sutton & Kelly, Milwaukee, Wis., for plaintiffs-appellants.
 Bruce Schrimpf, Office of the City Atty., Milwaukee, Wis., for defendants-appellees.
 Before WOOD, Jr., MANION, and KANNE, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Eddie Martin, Thomas Wynn, Jr., and other named and unnamed plaintiffs brought suit individually and as a class against the City of Milwaukee, the City's Bureau of Forestry, and various city employees and agencies, alleging racial discrimination in job promotion and transfer in violation of Title VII, section 1981 and section 1983. The district court, 736 F.Supp. 206, entered summary judgment in favor of the defendants, and the plaintiffs appeal. We affirm.
 
 I.
 
 2
 In the original complaint filed in federal district court, the plaintiffs alleged that the defendants had discriminated against them in promotions, salary, and hiring. Plaintiffs sought to represent a class of black employees of the Bureau of Forestry as well as individual employees of the Bureau. The complaint alleged that the Bureau intentionally restricted black employees to laborer positions and failed to promote qualified blacks to the supervisory ranks. Specifically, plaintiffs alleged that Eddie Martin, a twenty-eight-year employee of the Bureau, and other individual blacks with similar qualifications, had been repeatedly denied a promotion to supervisor. At the same time, it was alleged that less-qualified whites had been placed in the available supervisory positions. Plaintiffs also alleged that the jobs in comparable divisions of the Bureau filled predominantly by whites were paid higher salaries than those positions filled predominantly by blacks.
 
 
 3
 A second complaint was filed in state court by Thomas Wynn, Jr., one of the plaintiffs in the federal lawsuit. Wynn held agronomy and horticulture degrees from Tuskegee University and was employed in a nonsupervisory position with the Bureau. He alleged that he became eligible for promotion, took the promotion examination, scored extremely high, but was denied the promotion. He alleged that he was denied the supervisor's position because of his race. Wynn's state court suit was removed to federal court and later consolidated with the first suit.
 
 
 4
 In addition to the City of Milwaukee, Mayor John Norquist, and the Bureau of Forestry, the defendants also included: Robert Skiera, the City Forester and head of the Bureau; Richard Meyer, the Assistant City Forester; the Milwaukee City Services Commission, an agency responsible for fair employment practices; and E. Frank Bridges, the President of the City Services Commission.
 
 
 5
 After the two cases were consolidated, the defendants filed a motion for summary judgment, attaching the depositions and affidavits of numerous witnesses. Among those deposed were Martin and Wynn; Martin essentially reiterated the facts that formed the basis of the first complaint, while Wynn made additional allegations regarding his discrimination claim. The defendants also submitted the affidavit of an expert witness, Dr. David Friedland, who determined that the employment figures showing exclusively white supervisors in the Bureau failed conclusively to demonstrate disparate impact. According to Friedland, because so few blacks had applied for these positions over the years, any disparate impact analysis could be uncertain because it would not produce statistically significant correlations.
 
 
 6
 Plaintiffs filed a cursory response to the summary judgment motion.[1] In their counter-motion, plaintiffs argued generally that summary judgment was a disfavored means of resolving race discrimination suits, and that they had made a showing sufficient to establish disputed issues of material fact, particularly with respect to the existence of statistical evidence of race discrimination. Despite defendants' strongly supported motion, plaintiffs apparently did not depose any witnesses for no deposition transcripts were attached to their response. Instead, plaintiffs attached the affidavits of Martin and Wynn, and an affidavit from their own statistical expert that called into question the defendants' statistical analysis.
 
 
 7
 In his affidavit, Martin stated that he had witnessed during his twenty-eight years of employment that the Bureau's management relegated blacks to the lowest paying jobs, denied blacks well-deserved promotions, used subjective testing procedures to disqualify blacks from certain positions, and under-compensated positions that had predominantly black employees. He also alleged that he had attempted to secure a passing score on the supervisor's test three or four times, but "was failed" each time.
 
 
 8
 Wynn stated in his affidavit that he had taken the supervisor's test in October 1987 and had placed second in the city on the eligibility list. This test was nullified, however, and Wynn stated that he was forced to re-take the written exam and submit to a "subjective" oral examination as well. Wynn stated that during the oral examination he was interviewed by people who "had nothing to do with the Bureau of Forestry and one of the persons who interviewed me was a past enemy of my father." After the second test, Wynn stated that he was placed twentieth on the eligibility list.
 
 
 9
 Plaintiffs' expert, Dr. Jack Stebbins, stated in his affidavit that Friedland's statistical analysis was subject to criticism. Stebbins did not perform his own independent analysis; he restricted his comments to a critique of Friedland's study. For example, Stebbins noted that although insufficient data existed to support a precise analysis of annual employment figures, this problem was eliminated if the employment figures from two or more years were aggregated. When this was done, according to Stebbins, the figures showed a statistically significant disparate impact on blacks with respect to the supervisory positions with the Bureau. We note, however, that Friedland did not aggregate employment figures in his analysis because he felt it was impossible to determine whether one minority employee represented numerous applications over the period of years. According to Friedland, repeated applications by the same black employee (or any employee for that matter) would render the analysis inaccurate.
 
 
 10
 The district court entered summary judgment in favor of the defendants. Relying on Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), the judge held that, contrary to plaintiffs' assertions, it was proper to grant summary judgment in discrimination cases where, as here, the plaintiff failed to establish a prima facie case of disparate impact. According to the court, plaintiffs failed to establish the existence of the causal link between the employer's employment practices and the fact that blacks were under-represented in certain positions within the workforce. As to Wynn's individual claim, the court concluded that Wynn failed to establish the existence of a genuine issue of material fact with respect to the defendants' decision not to promote him to supervisor.
 
 II.
 
 11
 On appeal, plaintiffs argue that the district court prematurely granted summary judgment for the defendants. They again contend that summary judgment is inappropriate in discrimination cases, claiming that "the traditional resolution of such lawsuits has been trial and decision on the merits." However, as an en banc panel of this court held in International Union, UAW v. Johnson Controls, 886 F.2d 871, 887-88 (7th Cir.1989), cert. granted, --- U.S. ----, 110 S.Ct. 1522, 108 L.Ed.2d 762 (1990),
 
 
 12
 [t]he allocation of the burden of proof under substantive Title VII law ... plays a significant role in summary judgment proceedings.... "Summary judgment is properly entered in favor of a party when the opposing party is unable to make a showing sufficient to prove an essential element of a case on which the opposing party bears the burden of proof." Commons v. Williams, 859 F.2d 467, 469 (7th Cir.1988).... "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " [Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1988) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)) ].
 
 
 13
 Thus, on each of the claims advanced in their consolidated suit, plaintiffs were required to make a showing sufficient to prove the elements of their claims. If they failed to make a sufficient showing, summary judgment was properly entered against them.
 
 A. Disparate Impact
 
 14
 The plaintiffs sought to proceed on their class action claim under a disparate impact theory of race discrimination. They alleged, and the defendants admitted, that no black had ever served as a supervisor in the Bureau. It is clear that plaintiffs may use properly prepared statistical evidence to help establish a prima facie case of disparate impact. Wards Cove, 109 S.Ct. at 2121. We need not decide whether plaintiffs established this element of their case because plaintiffs in disparate impact cases are also " 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.' " Id. at 2124 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994, 108 S.Ct. 2777, 2788-89, 101 L.Ed.2d 827 (1988) (emphasis added)). This element establishes the requisite causal link between the employer's actions and the existence of a statistically imbalanced work force. Without it, the plaintiff has not established a prima facie case of disparate impact. Id. 109 S.Ct. at 2125.
 
 
 15
 The district court held that the plaintiffs had failed to identify any specific promotional practices that allegedly caused the racial disparity. Plaintiffs alleged that the written tests combined with oral interviews resulted in racial discrimination. These allegations, however, were not supported by specific facts demonstrating a triable issue; they were generalized and unsupported assertions. Yet the plaintiffs insist that "[t]he most significant oversight of the District Court is its refusal to acknowledge the facts pled in the verified complaint and the submissions of the four affidavits." (emphasis added). The plaintiffs misunderstand their burden in responding to a motion for summary judgment. As we have previously outlined,
 
 
 16
 [t]o create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. See Macklin v. Butler, 553 F.2d 525, 528 (7th Cir.1977); Rule 56(e), Fed.R.Civ.P. A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue. See Shacket v. Philko Aviation, Inc., 681 F.2d 506, 513 n. 8 (7th Cir.1982); Whitfield v. Gangas, 507 F.2d 880, 882 (10th Cir.1974). Rule 56 of the Federal Rules of Civil Procedure clearly requires that an adverse party set forth specific facts showing a genuine issue for trial.
 
 
 17
 Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983) (emphasis added).
 
 
 18
 Thus, the facts alleged in plaintiffs' complaint have little relevance at the summary judgment stage. Puckett v. Soo Line R.R., 897 F.2d 1423, 1425 (7th Cir.1990) (reliance on facts pled in complaint to create disputed issues of material fact "wholly misplaced"); Goldberg v. Household Bank, 890 F.2d 965, 967-68 (7th Cir.1989). The plaintiffs must go a step further and make a specific, supportable showing to defeat a motion for summary judgment. The affidavits plaintiffs filed in this case do nothing more than condense the facts alleged in the complaints. There were no additional facts to be gleaned from the affidavits--they simply reiterate the allegations of the original complaints without providing any factual support. In light of this fact, the district court properly granted summary judgment with respect to the disparate impact claims in the complaint.
 
 B. Disparate Treatment
 
 19
 There remain the individual discrimination claims advanced by plaintiffs Martin and Wynn. In analyzing individual claims of race discrimination under Title VII,[2] the Supreme Court has stated that
 
 
 20
 [t]he burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.... [T]he burden th[en] shifts to the defendant ... to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason.
 
 
 21
 Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Should the employer provide a nondiscriminatory justification for the employment decision, the plaintiff then must "demonstrate that the proffered reason was not the true reason for the employment decision.... either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. Of course, if this issue requires weighing the credibility of witnesses or the facts in question, summary judgment is inappropriate. See, e.g., Renovitch v. Kaufman, 905 F.2d 1040, 1044 (7th Cir.1990).
 
 
 22
 Martin's allegations of individual race discrimination boil down to a claim that, despite having the most seniority in the Bureau, he has repeatedly been denied a promotion because of his race. His allegations of discrimination, however, were undercut by his deposition testimony. At his deposition, he testified that he had taken the qualifying examination three or four times but had never received a passing grade. He felt that he should not have been required to take the objective test to receive a promotion because of a "grandfather clause" that allegedly applied to him and other employees who were employed with the City since 1960. Martin suggested at his deposition that the objective test be eliminated entirely, presumably to be replaced by a system of promotions based solely on seniority.
 
 
 23
 As the district court properly held, Martin's claim of individual discrimination failed because he did not meet his initial burden of establishing a prima facie case. Specifically, Martin failed to show that he was qualified for the position he sought. Although he alleged that the objective tests failed properly to measure the requirements of the supervisor job and that they were a "scam," these allegations went unsupported at the summary judgment stage. With no evidence that the objective testing procedure was discriminatory or had a discriminatory impact on blacks, the district court acted properly in entering summary judgment for the defendants on Martin's individual claim.
 
 
 24
 Wynn likewise pursued relief under an individual discrimination theory. Although Wynn's affidavit essentially repeats the general allegations in the complaint, he provided at his deposition additional facts in support of his claim that the persons in charge of hiring for the Bureau intentionally altered the evaluation process to prevent him from being promoted to supervisor. He stated at his deposition[3] that he had the second highest examination score in the city on the written exam, and that he should have been awarded the job because the person who scored first was ineligible for the supervisory position because he was not a resident of the city of Milwaukee. Wynn also stated that after he found out his score he spoke with Bob Skiera, the Bureau Chief. Skiera allegedly told Wynn that the Bureau was not required to hire the most qualified person for the job, namely Wynn. Instead, the Bureau could fill the supervisor position with a "warm body." Wynn also recounted in his deposition incidents in which management-level City employees expressed what he considered to be racist sentiments.[4]
 
 
 25
 This evidence, although sparse, was sufficient to shift the burden to the defendants to produce a "legitimate, non-discriminatory reason," Burdine, 450 U.S. at 254, 101 S.Ct. at 1094, for not hiring Wynn. This justification was offered in the deposition testimony of Skiera. According to Skiera, an eligibility list existed prior to the time Wynn took the supervisor exam. This list did not contain the names of any minorities, Skiera stated, so the Bureau decided to administer a second examination in the hopes of generating a minority candidate for the supervisor position. Skiera assumed that the pre-existing list and the list from the new examination could be merged to come up with a final eligibility list. After the examination, he merged the lists, and Wynn was placed second. It was later discovered, however, that, under the City's civil service rules, the members of the pre-existing list had absolute priority over the candidates on the second list, and therefore no minorities were eligible for promotion. To rectify this problem, Skiera testified that both lists were abolished, and everyone who wanted to apply for the supervisor position would re-take the examination. This way, according to Skiera, a single list of eligibles would be generated--hopefully with qualified minorities among the top names. On this second examination, Wynn placed twentieth. Skiera's deposition testimony sufficiently "articulate[d] lawful reasons for the [employment] action." Id. at 257, 101 S.Ct. at 1096. Therefore, the burden remained with Wynn to "demonstrate pretext." Id. at 258, 101 S.Ct. at 1096.
 
 
 26
 Plaintiffs failed to establish that defendants' justification in this case was a pretext for race discrimination. In fact, they offered no evidence on this point whatsoever. At oral argument, counsel for plaintiffs claimed that defendants never offered any explanation for abolishing the two eligibility lists. Skiera's deposition testimony, which certainly was available to plaintiffs, belies this contention. Plaintiffs would have us believe that Skiera's explanation was pretextual without offering any evidence to support such a conclusion. However, plaintiffs need to make a supportable showing of pretext to fend off a properly supported motion for summary judgment. Here, plaintiffs failed even to ascertain the nature of defendants' justification, let alone offer evidence suggesting that this reason was a pretext for race discrimination. They therefore failed to meet their burden of proof at the summary judgment stage.
 
 
 27
 In addition, Wynn testified that race may not have been a motivating factor in his lower placement on the second eligibility list. Wynn alleged that the panel that conducted the oral examination included a person who had a grudge against his father. When asked whether he remembered the names of the other panel members, Wynn replied
 
 
 28
 No, I don't, with the exception of Will Hudson who had had problems with my father with the Association of Black Veterans who was basically ousted out of that organization. I did not know him, but I'm Tom Wynn, Jr., my father's Tom Wynn, Sr., and from checking out with Will Hudson--he ranked me the worst. People g[a]ve me eights and nines; Will would give me a three, and I think that he should not have been on that panel because--I did not know him, but once he went out to the street, he told people about he'd [sic] interviewed me and that and bla bla, blue blue; so my point was that Will Hudson who is a black individual, he was the most negative.
 
 
 29
 Wynn does not allege that the defendants placed Hudson on the panel knowing that he would score Wynn low and thus keep him off of the eligibility list. From Wynn's own testimony it appears that his claim of race discrimination is actually a claim that one member of his evaluation panel bore a personal grudge against him. Unfortunately for Wynn, a personal grudge does not equal race discrimination. As the district court stated,
 
 
 30
 [t]he court is sympathetic with the situation of plaintiff Thomas Wynn, who is obviously a very qualified individual. The court must find, however, that there is no genuine issue of material fact with respect to the City's decision not to promote him to supervisor.
 
 III.
 
 31
 Plaintiffs' repeated attempt to stave off a properly filed and thoroughly supported summary judgment motion with the argument that such judgments are disfavored merits a final comment. Plaintiffs misconstrue the concept that summary judgment in employment discrimination cases is " 'infrequently an appropriate resolution.' " Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989) (quoting Powers v. Dole, 782 F.2d 689, 694 (7th Cir.1986)). It is not always inappropriate simply because the case raises issues of motive and intent. Holland, 883 F.2d at 1312. Even in discrimination cases, parties should not be subjected to the time and expense of trial when there are no material issues in dispute. Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir.1989) (the purpose of Rule 56 "is to head off a trial, with all the private and public expenses that a trial entails, if the opponent ... of summary judgment does not have a reasonable prospect of prevailing before a reasonable jury"). Defendants filed a motion for summary judgment that was supported by numerous affidavits as well as deposition testimony of at least twenty-eight witnesses. Defendants hired a statistical expert to analyze employment data and submitted extensive employment histories and records. Plaintiffs, on the other hand, filed a four-and-one-half page response and attached four affidavits. Two of the affidavits, from Martin and Wynn, were simply restatements of the allegations in their complaints. Another was from plaintiffs' statistical expert, Stebbins. Unlike Friedland, defendants' expert Stebbins did not conduct his own study of the employment data; instead his affidavit is confined to criticizing Friedland's conclusions and suggesting that the data could be interpreted differently.
 
 
 32
 While presumably relying on the hope that the district court would agree that they had an inherent right to a trial (notwithstanding the lack of any genuine material issues), plaintiffs failed to meet their burden at the summary judgment stage. As we noted in Johnson Controls, 886 F.2d at 888,
 
 
 33
 [o]ur inquiry must be based on the underlying premise that the creation of a record adequate to meet legal challenges is the responsibility of the parties litigating the case.... "A district court need not scour the record to make the case of a party who does nothing.... [C]ourts will not discover that the movants slighted contrary information if opposing lawyers sit on their haunches; judges may let the adversary system take its course." Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir.1989).
 
 
 34
 Plaintiffs were responsible for building and supporting a record adequate to meet the challenge of defendants' strong summary judgment motion. Possibly the factual basis for a strong response was lacking; possibly plaintiffs simply failed to gather and organize a response adequate to preserve their day in court. Either way, plaintiffs were not entitled to subject the defendants to the cost of trial on the facts they presented. The district court therefore acted correctly in bringing this case to an end.
 
 IV.
 
 35
 The disparate impact claim plaintiffs advanced in the district court was not properly supported at the summary judgment stage, and the district court did not err in entering summary judgment for defendants. Likewise, the court properly granted judgment on the individual claims of race discrimination. Martin failed to meet his prima facie case of discrimination, and Wynn failed to rebut the defendants' legitimate explanation for their employment decision. Therefore, the decision of the district court granting summary judgment to the defendants on all claims is
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 The district court noted that on the day before the plaintiffs' response was due, they requested a summary denial of the defendants' motion or, in the alternative, an extension of time within which to file a response. The plaintiffs were allowed to file their response two-and-one-half months later. Even then, in response to what the district court described as the defendants' "voluminous motion ... supported by numerous affidavits and twenty-eight depositions," the plaintiffs filed a four-and-one-half page brief
 
 
 [2]
 In Patterson v. McLean Credit Union, --- U.S. ----, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989), the Court held that a claim that an employer failed to promote an employee due to race discrimination states a cognizable claim for relief under section 1981 if "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." In our case, there are insufficient facts in the record to determine whether Martin or Wynn would have had a "new and distinct" contractual relationship with the Bureau. Given our affirmance of the district court's decision that the plaintiffs failed to carry their burden at the summary judgment stage, we need not reach this issue
 
 
 [3]
 We note that Wynn's full deposition testimony was not supplied to this court. The defendants deposed Wynn and other plaintiffs and submitted pertinent excerpts from these depositions in support of their motion for summary judgment. These excerpts, and additional materials defendants filed with their summary judgment motion, were supplied to us in the form of appendices to defendants' brief to this court. Plaintiffs, apparently having taken no depositions during the course of discovery, filed four affidavits with their response. Wynn makes no reference to the balance of his deposition for additional factual support
 
 
 [4]
 For example, William Smithyman, a division head within the Bureau, allegedly told Wynn that Eddie Martin, a plaintiff in this case, was "one of the best straw bosses in the city." Wynn stated that he was unsettled by Smithyman's application of this "plantation term" to one of the Bureau's employees. In a second incident, Wynn recounted that before he was hired into his present position, he had attempted to secure a job with another division of the Bureau. When he was rejected for the job, he claims that the supervisor would give no other reason than that Wynn would not "fit in" with the group. Wynn explained that this meant that he would be the only black in the all-white work group and that the supervisor would therefore not offer him the job