**Halton BUTLER, Plaintiff,**

v.

## CONSOLIDATED RAIL CORPORATION, Defendant.

### No. IP 97–0058 C M/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 13, 1998.

---

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, IN, for plaintiff.

Cynthia M. Locke, White & Raub, Indianapolis, IN, for defendant.

### ORDER on MOTION FOR SUMMARY JUDGMENT

MCKINNEY, District Judge.

Defendant Consolidated Rail Corporation ("Conrail") has brought a motion for summary judgment against plaintiff Halton Butler ("Butler"). At issue is whether Butler suffered racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, and § 1981, 42 U.S.C. § 1981, when Conrail terminated his employment in March of 1996. The issues have been fully briefed by counsel and are ready to be resolved. For the reasons discussed below, the Court GRANTS Conrail's motion for summary judgment.

### I. FACTUAL & PROCEDURAL BACKGROUND

Conrail hired Butler, an African–American male, as a laborer in August of 1979. Butler Aff. ¶¶ 1, 3. Butler's employment was covered by a Collective Bargaining Agreement ("CBA"), as he was a member of the International Brotherhood of Firemen & Oilers ("IBFO").[1] *Id.* Ex. A. On December 5, 1995, Butler was scheduled to report to work at the Avon Diesel Terminal at 3:00 p.m. According to witnesses, right around 3:00 that day Butler was involved in a head-on collision with Carl Crouch ("Crouch"), another Conrail employee, on Conrail property. Butler Aff. ¶ 14; Harville Aff. ¶ 11, Ex. P. The accident occurred on the east end of Conrail property near a railroad crossing. Harville Aff. ¶ 11, Ex. P. Both Crouch and Butler were injured. Harville Aff. ¶ 12; Butler Aff.

¶ 15. Crouch suffered a fractured skull and an epidural hematoma. Harville Aff., Ex. P, Ex. 1. Butler maintains that in addition to his abrasions and bruises, he cracked his pelvis. Butler Aff. ¶ 15. Conrail police officer Alford Kapp ("Kapp") and Conrail claims agent David Tucker ("Tucker") investigated the accident and reportedly talked with witnesses. Tucker and Kapp then provided Randy Harville ("Harville") the Shop Manager of the Locomotive Shop at Conrail's Avon Diesel Terminal[2] with a preliminary investigative report. Harville Aff. ¶¶ 1, 15. After receiving these preliminary results, Harville sent Butler a Notice of Investigation trial or hearing on December 6, 1995. *Id.* ¶ 15, Ex. J.

The Notice of Investigation informed Butler that effective December 6, 1995, at 3:00 p.m., he was to be held out of service pending formal discipline proceedings regarding the accident. Harville Aff., Ex. J. Conrail charged Butler with engaging in "extremely negligent, grossly improper and dangerous conduct" and with violating Conrail Safety Rules, 4438, 4442, and 4445 of the S7D Safety Rule Book.[3] *Id.* Butler had previously received a copy of the Safety Rule Book and had signed a form in recognition of the fact he was required to know the rules and obey them while on duty or on company property. Harville Aff., Ex. L. An August 27, 1993, Conrail memorandum specified engaging in "extremely negligent and grossly improper or dangerous conduct" as a major offense that would warrant dismissal or a lengthy suspension. Harville Aff., Ex. T. Crouch was not held out of service following the accident, but because of his injuries, he was not able to return to full-time work with Conrail. Harville Aff. ¶ 12.

A discipline trial was originally scheduled for December 20, 1995, but it was continued

---

**1.** In his brief and through the use of affidavits, Butler tries to argue that Conrail violated Rule 20(b) of Collective Bargaining Agreement when it suspended him. Davenport Aff. ¶ 8. Whether Conrail violated the CBA is not a question of employment discrimination law and the CBA issue has not been raised in the complaint. Therefore, the Court will not address this argument.

**2.** As the Shop Manager, Harville is the custodian of certain records of the employees assigned to the Locomotive Shop. Harville Aff. ¶ 2. Butler was an employee at the Locomotive Shop. *Id.*

**3.** Safety Rule 4438 reads "[d]rivers of motor vehicles must obey local, state and/or federal motor vehicle codes." Harville Aff., Ex. K. Rule 442 reads "[a] vehicle driver must slow down and determine that it is safe to cross railroad tracks even though the position of the crossing gates or signal may indicate that it is safe to cross." *Id.* Under Rule 4445 "[t]he vehicle driver is responsible for the safe and proper operation of the vehicle in his charge and the safety of the occupants ..." *Id.*

twice while Butler recovered from his injuries and once because the hearing officer was unavailable. Harville Aff. ¶ 19. Butler's trial was held on February 27, 1996. *Id.* ¶ 20. Butler was present and represented by union representatives Paul Kern and Kenny Davenport ("Davenport"). Butler Aff. ¶ 16. Ronald R. Ledowski, Conrail Manager–Oil Control Laboratories from Albany, New York, presided over the trial. Harville Aff. ¶ 20; Harville then received that trial transcript which included testimony from Kapp, Tucker, and four witnesses including Dave Lyles, Russell Glidden, Caroll Smithers, and Gary Sherlock. Harville Aff., Ex. P. In the transcript, Tucker had also introduced the findings of Henry Kijonka ("Kijonka"), an accident reconstructionist, who prepared a report for Conrail. *Id.* Additionally, Harville reviewed the statements of Conrail employees Larry Armstrong ("Armstrong") and James Guffey ("Guffey") that were given to him by Tucker. Harville Aff. ¶ 21.

After reviewing the trial transcript and the other information given to him, Harville recommended that Butler be terminated. Harville Aff. ¶ 24. Harville consulted with Harold Grismore ("Grismore"), the General Foreman at the Avon yard, who accepted Harville's recommendation. Conrail issued Butler a Notice of Discipline on March 12, 1996, that terminated Butler's employment. Harville Aff., Ex. S. The notice listed the reasons for Butler's dismissal as his extremely negligent, grossly improper and dangerous conduct while reporting for duty on December 5, 1995, and his violation of three Conrail Safety Rules in connection with the accident. *Id.* The notice was signed by Grismore and the termination was effective immediately. *Id.*

Pursuant to the CBA governing his employment, Butler appealed the termination decision to the Manager of Labor–Relations and then to the Director of Labor–Relations. Both of those appeals were denied. Harville Aff. Exs. W & V. Finally, pursuant to the Railway Labor Act, Butler appealed to the Public Law Board, which denied his appeal on November 5, 1996. *Id.* ¶ 29; Ex. X. Butler filed his EEOC charge on April 26, 1996, the day his appeal to the Manager of Labor–Relations was denied. *See* Compl. In his EEOC charge, Butler alleged that he had been discriminated against on account of his race and that the earliest discrimination took place on December 6, 1995, with the latest taking place on March 12, 1996.[4] *Id.*

## II. STANDARDS

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1267–68 (7th Cir.1990), *cert. denied,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

4. In his affidavit, Butler stated that prior to the accident when he was late to work his pay was docked while white employees who were late to work were not docked. The incidents that he describes took place in late 1994 and early 1995. Butler's complaints regarding the differences in pay will not be addressed in this suit. Neither Butler's EEOC charge nor his complaint allege this pay discrepancy as an act of discrimination. See *Oates v. Discovery Zone,* 116 F.3d 1161, 1168 (7th Cir.1997).

(1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir.1996). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir.1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996). Irrelevant or unnecessary facts do not deter summary judgment—even when in dispute. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir.1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.1996). Cases in which the parties agree that no genuine issues of material facts are in dispute and that the contested issues are purely legal ones are especially appropriate for summary judgment. *Amax Coal Co. v. United Mine Workers of America*, 92 F.3d 571, 574 (7th Cir.1996).

On certain occasions, the Seventh Circuit had suggested that a court approach a motion for summary judgment in an employment discrimination case with a particular degree of caution. *See, e.g., Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). The language implied that summary judgment might be less appropriate in this context based upon the presence of issues of motive and intent. *Holland*, 883 F.2d at 1312. However, as the Seventh Circuit has recently emphasized, these cases do not establish a heightened summary judgment standard for employment-related cases. Instead, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir.1997). Even when discriminatory intent is at issue, summary judgment is appropriate when the nonmovant presents no evidence to indicate motive or intent in support of her position. *See Holland*, 883 F.2d at 1312. Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support. *Cliff v. Board of School Comm'rs*, 42 F.3d 403, 408 (7th Cir.1994). Guided by these standards, this Court now considers these motions for summary judgment.

### III. DISCUSSION

#### A. SUMMARY OF ARGUMENTS

Butler argues that his suspension and termination were the result of race discrimination by Conrail. He contends that Crouch was responsible for the accident and that Conrail suspended him, and not Crouch, with little information as to what had taken place. In arguing that his discipline trial was conducted in a prejudicial manner, Butler highlights that a Conrail employee presided over the trial, there was no evidence as to a second cause of the accident, Crouch was not present at the trial, the accident reconstructionist was not available for cross examination, and the Union representatives' objections were supposedly ignored. He further maintains that white employees who had vio-

lated "blue flag" safety rules while on duty were able to return to work after serving their suspensions. According to Butler, all of this evidence shows that he has established a prima facie case of discrimination and has proven that any reason Conrail has given for their actions is pretext for a discriminatory reason.

Conrail questions whether Butler can prove the "similarly situated" prong of the prima facie case, but argues that even if he can, it has offered a legitimate nondiscriminatory reason for holding Butler out of service and terminating him. Conrail disputes the argument that Butler was similarly situated to workers who violated other safety rules. Furthermore, Conrail contends that their conclusions regarding the accident were justified as the witnesses' statements and Kapp's findings were corroborated by the findings of the accident reconstructionist. Arguing that Butler has provided no evidence which demonstrates that the reasons for their actions were pretext, Conrail maintains that Butler has failed to meet his burden.

### B. ANALYSIS

Title VII makes it unlawful for an employer to discriminate against an individual on the basis of his race. 42 U.S.C. § 2000e–2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same rights in every State ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. That right extends to "the making, performance, modification, and termination of contracts, and the enjoyment of benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The legal standards which govern liability under § 1981 are identical to those governing disparate treatment claims brought under Title VII.[5] *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 669 (7th Cir.1996).

Butler has claimed disparate treatment under Title VII and therefore must demonstrate that he was intentionally discriminated against on account of his race. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1263

(7th Cir.1993) *cert. denied* 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). In demonstrating this, Butler may offer direct evidence of discriminatory intent, or he may utilize the indirect, burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 632–34 (7th Cir.1996). Butler has offered no direct evidence of discrimination, and therefore he must utilize the *McDonnell Douglas* framework. The burden of persuasion remains with the Butler at all times. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

### 1) Establishing the Prima Facie Case and the Legitimate Nondiscriminatory Reason

■ Under the *McDonnell Douglas* framework, a prima facie case of racial discrimination requires a plaintiff to demonstrate that he (1) belonged to a protected class; (2) performed his job satisfactorily; (3) suffered a materially adverse employment action; and (4) that his employer treated similarly situated employees outside of his classification more favorably. *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir.1994). Conrail does not concede that Butler established a prima facie case of discrimination. It questions whether Butler has demonstrated that he was performing his job satisfactorily and whether similarly situated employees outside of his classification were treated more favorably. Regardless of these concerns, however, Conrail concentrated little time on the prima facie argument and proceeded directly to offering legitimate nondiscriminatory reason for its actions and focusing its arguments on why those reasons were not pretext for discrimination.

■ According to the Supreme Court, the prima facie case method set out in *McDonnell Douglas* was not meant to be a rigid way

---

5. To prevail under § 1981, Butler would have to demonstrate that he had been the victim of inten-

tional discrimination. *Melendez*, 79 F.3d at 669.

of establishing the plaintiff's case. *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Instead, "[w]hen the defendant has done everything that would be required of him if the plaintiff properly made out a prima facie case, whether the plaintiff really did so is no longer relevant," as the Court has the information before it that is needed to decide if the defendant intentionally discriminated against the plaintiff. *Id.* Generally, under the *McDonnell Douglas* analysis, once a plaintiff makes a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Once the legitimate nondiscriminatory reason is articulated by the defendant, the *McDonnell Douglas* framework becomes irrelevant, and the plaintiff has the opportunity to demonstrate that the reason provided by the employer was pretext. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742. Therefore, as is the case here, once the defendant articulates a nondiscriminatory reason, the prima facie case becomes inconsequential and the Court must examine whether the plaintiff can meet his burden in proving pretext. Thus, the Court will not resolve whether the prima facie case was actually established but will instead proceed to determine whether Conrail has offered a nondiscriminatory reason for its actions and whether Butler has offered sufficient evidence to raise a genuine issue of material fact with regard to pretext. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir.1997).

When examining the reasons Conrail gave for its actions, the Court must remember that the reasons need only be nondiscriminatory reasons for the conduct, "which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The given reasons do not have to be a good justification for the conduct. *Timm v. Mead Corp.*, 32 F.3d 273, 275 (7th Cir.1994). Harville claims that he made the decision to hold Butler out of service after receiving prelimi-

nary accident investigation results from Kapp and Tucker which indicated that Butler was traveling at a high rate of speed and was the sole cause of the accident. Harville Aff. ¶ 15. Regardless of whether those reports were in fact accurate, according to Harville, that was the information he had when making his decision. With that information, Harville charged Butler with engaging in extremely negligent, grossly improper or dangerous conduct, which constituted a major offense, and with breaking three Conrail safety rules. Harville Aff. ¶ 18, Ex. T. Harville contends it is the practice of the company to hold employees out of service pending further investigation when they are charged with serious rule violations or major offenses. *Id.* ¶ 18.

In regards to his termination, Harville explained that after reviewing the discipline trial transcript and considering the statements given by Conrail employees Armstrong's and Guffey, he consulted with Grismore and determined that Butler should be terminated. *Id.* ¶¶ 23–24. Those reports contained information from the accident reconstructionist findings, the eyewitness accounts, and Kapp's findings. *See* Harville Aff.Ex. P. Armstrong and Guffey's statements concerned Butler's tendencies to brag about his speeding on company property. Again, whether all this information is true and accurate is not the Court's concern at this point. In both decisions, Harville claims he consulted the reports before him and made his decision based on that information. If a fact finder were to believe Harville's explanation, he would have provided legitimate nondiscriminatory reasons for holding Butler out of service and then terminating him. Therefore, it is Butler's burden to offer evidence which demonstrates that Conrail's given reasons are pretextual.

### 2) Establishing Pretext

To establish pretext a plaintiff must be able to prove both that the offered "reason was false and that discrimination was the real reason." *Hicks*, 509 U.S. at 515, 113 S.Ct. 2742; *see also Johnston v. Amax Coal Co.*, 963 F.Supp. 758, 765–66 (S.D.Ind.1997). A plaintiff may demonstrate pretext by offering evidence that proves "either that the

proffered reasons do not deserve credence or that discriminatory intent more likely motivated the action." *Cliff v. Board of Sch. Comm'rs of City of Indianapolis,* 42 F.3d 403, 412 (7th Cir.1994). As long as the reason was an honest one, the fact that a company's employment practices are misguided or mistaken is not relevant to the Court's inquiry. *Id.* at 766. As long as an employer honestly explains the reasons for its decision, no matter how ill-informed or ill-considered the decision may be, the explanation is not a pretext. *Bruno v. City of Crown Point,* 950 F.2d 355, 364 (7th Cir.1991) (citing *Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d 557, 559 (7th Cir.) *cert. denied* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987)). The Court must be cautious in examining the plaintiff's pretext argument, as " 'there is a fine line between evidence that appropriately challenges the employee's proffered reasons as being unworthy of credence and evidence that the employer has made a mistake or a bad business judgment.' " *Johnston,* 963 F.Supp. at 766 (quoting *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir. 1994)). It is not the Court's duty to sit as a "super-personnel department that reexamines an entity's business decisions." *Mechnig v. Sears, Roebuck, & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988).

### a) Cause of the Accident

▮ Butler offers three arguments as to why the reasons given by Conrail are pretext for discrimination. First Butler contends that the accident was not his fault. He attempts to dispute the actual cause of the accident by claiming that the road narrows at the tracks, the crossing was dangerous, there were no speed signs posted on the road and that Crouch was speeding and crossed into his lane. Butler Aff. ¶¶ 13–14. He also questions the accuracy of the investigative findings made by Kapp, Tucker, and Kijonka and questions their motives in making those findings.

Butler has produced little supporting evidence for his claims, and his self-serving allegations without supporting evidence are not sufficient to raise a genuine issue of material fact. *Johnston,* 963 F.Supp. at 767

(citing *Cliff,* 42 F.3d at 408.) However, even if Butler had presented evidence to support these allegations, it is not the Court's role to determine who was at fault in the accident, nor is the determination of fault relevant to the Court's inquiry. In fact, even if the reports by Kapp, Tucker and Kijonka were incorrect and Harville's resulting decisions to charge Butler with the violations, hold him out of service and terminate him were incorrect, Conrail is not necessarily guilty of discrimination. According to the Seventh Circuit, "[w]hether the employer's stated reasons were *wrong* is irrelevant, for a mistake by the personnel department does not violate federal law...." *Monroe v. Children's Home Ass'n of Illinois,* 128 F.3d 591, 593 (7th Cir.1997) (emphasis original). The employment discrimination laws "do not mandate that employers follow reasoned and fair decisional processes. Instead they require only that employers not base their decisions on forbidden reasons such as the employee's race, sex, or age." *Vanasco v. National Louis University,* 137 F.3d 962, 967 (7th Cir.1998); *See also Kuhn v. Ball State Univ.,* 78 F.3d 330, 332 (7th Cir.1996); *Mechnig,* 864 F.2d at 1365. Regardless of whether these reports were accurate or not[6], Butler has failed to produce evidence that Harville decision was based on anything other than the reports he was given. Butler has not offered evidence which supports the inference that Harville based those decisions on race instead of on the reports given to him. Whether he should have suspended and terminated Butler based on those reports is a business decision which the Court cannot and will not second guess. *Mechnig,* 864 F.2d at 1366.

### b) Fairness of the Discipline Trial

In attempting to show that Conrail made its discipline decisions based on his race and therefore its given reasons are pretextual, Butler next argues that his discipline trial was conducted in a prejudicial manner. However, Butler supplies no evidence that supports this argument. The fact that a Conrail employee presided over the hearing does not automatically indicate that the hear-

---

6. The Court notes, however, that Butler has not offered sufficient evidence to support his argu-

ment that Kapp and Tucker discriminated against him on account of his race.

ing was biased in favor of Conrail. Butler provided no evidence that indicated that he requested a third continuance because of his injuries and was denied. Additionally, his complaint that the objections that he and his representatives made during the hearing were ignored is not supported by the evidence.[7] Butler has not introduced any evidence which demonstrates that the trial was conducted in a prejudicial manner.

### c) Similarly Situated Employees

■ The final attempt by Butler to show pretext is his allegation that white employees were treated more favorably than he was. Butler may establish pretext by offering evidence that similarly situated employees were treated more favorably. *Essex v. United Parcel Service*, 111 F.3d 1304, 1311 (7th Cir. 1997) (citing *Hargett v. National Westminster Bank, USA*, 78 F.3d 836, 839 (2nd Cir.) *cert. denied* 519 U.S. 824, 117 S.Ct. 84, 136 L.Ed.2d 41 (1996)). In support of his pretext arguments, Butler offers three examples of employees he believes were treated more favorably, including employees who were speeding on Conrail property, Crouch, and employees disciplined for blue signal violations.

According to Butler and Davenport, the Shop Committeeman for the IBFO, to the best of their knowledge, no one had previously been terminated for speeding on Conrail property. Davenport Aff. ¶ 7, 13. They both maintain that speeding is a problem on company property. *Id.* ¶ 13. Butler also emphasizes, and Conrail agrees, that there were no speed signs posted at the time of the accident. While this may all be true, the evidence indicates that Butler was not terminated for speeding. His notices of discipline concerning his suspension and termination listed Butler's violation of a major offense and three safety rules as the reason for his discipline. Had Butler been terminated for speeding, absent the accident, Butler's argument would be more appropriate. This, how-

ever, not being the case, the argument that others were not terminated for speeding does not raise an inference of discrimination on the part of Conrail.

■ Focusing in on employees who Butler perceived as similarly situated to himself, Butler questions why Crouch, a white employee, was not suspended after the accident. He argues that at the time he was suspended, a complete investigation had not been made and the accident reconstructionist had yet to make his findings. Therefore, Butler maintains that if he was held out of service, Crouch also should have been suspended pending the investigation. According to Butler, the fact that Crouch was not held out of service indicates that Conrail discriminated against him when they suspended him. Again, the offered evidence does not support Butler's conclusion.[8] Harville stated that before he decided to hold Butler out of service, he had seen a preliminary investigation report by Kapp and Tucker, that presumably included some witness accounts that indicated that Butler was at fault. Harville Aff. ¶ 15. The police reports and witness accounts did not implicate Crouch as being at fault in the accident. Again, regardless of whether these reports were correct or not, those reports do not depict Butler and Crouch as similarly situated. Butler has not offered evidence which indicates that Harville's explanation that he relied on the investigation reports was not an honest reason for the actions he took. The fact that Harville treated Butler differently than he did Crouch does not raise an inference of a discriminatory motive on the part of Conrail.

■ Finally, Butler maintains that white employees have violated "blue flag" safety rules and have not been terminated by Conrail. Butler Aff. ¶ 6. Butler points specifically to the discipline record of G.E. Wilson ("Wilson"), a white employee, in support of his claim. Wilson received notices of disci-

---

7. The Court does note that the testimony in the discipline trial transcript, originally offered by Conrail, is not sworn testimony.

8. Additionally, it should be noted that Butler had previously had attendance problems and had recently come off probation for these problems. Harville Aff. ¶¶ 6–10, Exs. B–I. Butler is correct

in noting that Conrail did not state that the prior attendance problems were a reason for his suspension or termination. However, absent any evidence to the contrary, the Court presumes that Crouch did not have a similar discipline record which means that Crouch was not similarly situated to Butler.

pline for breaking Conrail Safety Rules when he performed his duties without blue signal and derailment protection on both July 13, 1988, and August 7, 1993. Plf.'s Ex. D. As a result of the August 1993 incident Conrail dismissed Wilson. *Id.* Following a meeting on December 9, 1993, Wilson was reinstated when he agreed to comply with certain conditions upon his return. *Id.* Wilson received another notice of discipline for a rule violation on January 9, 1996, for which he was given a verbal reprimand. *Id.* Butler maintains that he was never offered the opportunity to be reinstated and emphasizes that he did not violate blue signal and derailment protection rules, which he perceives as being serious safety infractions. Many of the other notices of discipline produced by Conrail indicate that other employees were held out of service pending the resolution of discipline proceedings and were subsequently suspended for violating blue signal and derailment protection safety rules.

Butler has not established that these employees, whose discipline records he relied on in support of his claim, are similarly situated. As Conrail noted, none of the records produced involved incidents where another Conrail employee was hurt because of the violation. Most of the discipline records offered to the Court involved incidents of blue signal infractions which constituted a violation of the Conrail safety laws. *See* Harville Aff., Ex. U. A violation of a safety rule was generally considered a non-major offense. *Id.*, Ex. T. Of the twelve workers whose records were produced, ten were Caucasian and two were African–American. Harville Aff. ¶ 28. Two of the Caucasian employees had been dismissed and the others had been suspended. *Id.* ¶ 28, Ex. U. At least two of the workers had admitted guilt and waived their trials, which resulted in a reduction in discipline. *Id.*

Unlike the workers whose records were offered, Butler was charged with a major offense and three counts of breaking Conrail Safety rules. None of the employees who Butler notes were suspended for blue signal and derailment protection infractions were charged with "extremely negligent, grossly

improper or dangerous conduct," which has been defined by Conrail as a "major offense" subject to dismissal or lengthy suspension. Harville Aff., Ex. T. Regardless of whether Butler feels that blue signal violations should be treated as more serious violations, Conrail considers a breach of those safety rules as a "non-major" offense. Harville Aff.Ex. T. Therefore, those violations are treated differently than major offenses. In offering these employee records in support of his discrimination claim, Butler tries to compare himself to workers who were charged with different and lesser violations. Given the difference in violations and the difference in the severity of those violations under Conrail's rules, these employees were not similarly situated to Butler.[9] Perhaps the employee that comes closest to being in a similar situation to Butler was a white male employee who was charged with "dishonest, negligent and grossly improper conduct ." Harville Aff ¶ 28, Ex. U [Jones file]. That employee was dismissed and was not reinstated. *Id.* Thus, the one worker who appears to be most closely situated to Butler, as he was charged with a similar violation, was not treated more favorably than Butler.

Butler has failed to show that he was similarly situated to other employees who received more lenient discipline. Absent an argument that other employees were similarly situated and treated more favorably, the discipline other employees received for safety violations does nothing to support Butler's discrimination claims. The discipline records do not raise an inference that Conrail's given reasons for suspending and terminating Butler were pretextual. Butler has been unsuccessful in offering evidence which would indicate that Conrail's reasons for disciplining him were not honest or that the real motivation behind Conrail's actions was discrimination.

### III. CONCLUSION

Conrail has offered a legitimate nondiscriminatory reason for the discipline actions it took following the accident between Butler

9. Additionally, when considering whether employees are similarly situated the Court takes into account employees' complete discipline records

and other factors, such as time of service to the company. The Court was not provided with that information in this case.

and Crouch. Butler has not provided evidence that establishes that the reasons given by Conrail are pretextual. As Butler has demonstrated no genuine issue as to a material fact, the Court **GRANTS** Conrail's motion for summary judgment. No triable issues remain for a jury trial and Conrail is granted judgment as a matter of law.