Mickey **WATHEN**, Plaintiff,

v.

**ALLISON ENGINE COMPANY, a DIVISION OF ROLLS ROYCE AEROSPACE GROUP, Defendant.**

No. IP 98–1073–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 18, 2000.

John H. Haskin, Haskin Lauter Cohen & Larue, Indianapolis, IN, for Plaintiff.

Herbert C. Snyder Jr., Barnes & Thornburg, Ft Wayne, IN, Michael A. Moffatt, Barnes & Thornburg, Indianapolis, IN, for Defendant.

## ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

Mickey Wathen (Wathen), an Allison Engine Company (Allison) employee, sued Allison for failing to promote her because of her age, sex, and race, and for retaliating against her and/or taking further discriminatory actions against her after she filed complaints about the discrimination. Allison moved for summary judgment on all claims. In her brief opposing Allison's summary judgment motion, Wathen stated that information obtained in discovery did not adequately support her race and sex discrimination claims, especially in light of recent decisions in this Circuit[1]; she therefore abandoned Counts II (reverse race discrimination) and III (sex discrimination). As Wathen has conceded that the evidence does not support Counts II and III, we GRANT Allison's Motion for Summary Judgment with respect to those claims without further review. Count I, alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and Count IV, alleging retaliation due to Wathen's filing of discrimination charges, re-

---

1. *See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 1, fn 1, citing *Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir.1999).

main for our consideration on Allison's Motion for Summary Judgment.

### Factual Background [2,3]

Mickey Wathen, a white female born February 11, 1944, began working for Allison Engine Company, a division of General Motors, in 1964 as a third-level stenographer earning less than $20,000 per year. (¶¶ 4, 6, 17, 62). Positions at Allison are ranked by levels, classified according to the amount of skill, training, and judgment required to fulfill the job duties (See ¶ 17–21, 26–30, 67; Williams Dep. at 22, 24, see also Defendant's Rebuttal ¶ 4). In 1988, Wathen transferred to the Human Resources (HR) Department, where she became a secretarial assistant, a fifth-level position. (¶ 20). In December of 1993, Allison became an independent corporation, separate from General Motors, with its own policies and procedures. (¶ 4). Rolls–Royce, a leading power systems corporation, later purchased Allison Engine. (¶ 5). The company currently employs over 4,000 people world-wide. (¶ 2). As a result of the first corporate restructuring and accompanying changes, Allison assumed many responsibilities that had been performed by General Motors. (See ¶ 4–6, 21–28, 66; Williams Dep. at 11). During the times of transition, job descriptions grew 'muddy' as employees adopted some duties previously belonging to employees of General Motors. (¶ 66).

From 1989 until 1996, Wathen's immediate supervisor in HR was Hank Williams, Director of Salaried Administration, born August 16, 1939. (¶ 22, 33). Wathen also received assignments from and provided support for Randy Harris, Manager of Employment Practices, (D.O.B.1–28–51) and James Durell, Manager of Salaried Administration (D.O.B.unknown). (¶ 23, 31). Wathen received good performance evaluations and earned several recognition awards during her tenure in HR. (¶ 24). Wathen admits [4] that she was the highest paid of all fifth-level secretarial assistants in the Human Resources Department. (¶ 25).

While the parties dispute the exact nature of Wathen's responsibilities, they agree that her job changed over time due to the new functions being performed by HR. Wathen claims she was performing some of Harris' job duties for him, in addition to sixth and seventh-level respon-

---

**2.** Allison moved to strike Plaintiff's Exhibits 1, 2, 3, 5, 6, 7 and 10. While some of these exhibits contain information that may also be found in other, clearly admissible, sources of evidence (e.g., deposition testimony), we find that even if we considered these exhibits, it would not help Wathen establish the existence of material fact issues necessitating a trial. The motion is therefore DENIED as moot.

**3.** Citations are to the numbered statements of fact and the responses thereto submitted by Defendant (¶¶ 1–61) and Plaintiff (¶¶ 62–89) pursuant to Local Rule 56.1, as well as Defendant's Supplementation of Rebuttal Facts (Defendant's Rebuttal ¶¶ 1–18). We note that the parties occasionally objected to each other's statements without subsequently admitting or denying the underlying facts, a practice which makes the task of determining the undisputed facts considerably more difficult. Under Local Rule 56.1(g), we will assume that a party admits all facts (supported by admissible evidence) as claimed, unless the party responds

by citing specific supporting evidence in contravention of a fact. For a comprehensive discussion of compliance requirements of the amended Local Rule 56.1, see Judge Tinder's Entry in *Pike v. Caldera*, 188 F.R.D. 519 (S.D.Ind.1999).

**4.** Wathen disavows complete agreement with this proposition on the grounds that Allison failed to produce an employee profile for Beverly Stewart, another HR employee, although we find it in Allison's Appendix at 2C. Allison claims Stewart's employee information is not a relevant basis for comparison because Stewart was not promoted from level five to six during the period of time in question; she was at level six throughout. The profile presented in Allison's Appendix appears to verify that Stewart held a higher, sixth-level position in HR at the time Wathen worked there. Wathen acknowledges that Stewart performed a different job function (executive assistant to the Vice President of HR as opposed to secretary). (Wathen Dep. at 28).

sibilities.[5] (¶ 27). Regardless of what specific tasks Wathen was actually performing, the record undisputedly reveals that she *believed* she was performing above her designated level, and that she therefore deserved a raise or a raise and promotion. Wathen asked Williams to compensate her for performing added responsibilities and believed that Williams said he would promote her to level six, but he failed to do so even though she frequently approached him about the matter. (¶¶ 32, 67–69).

Williams testified that when a job opening occurs, Allison analyzes the duties associated with the position, determines that it wants to hire a person of a particular level, and posts the opening. (Williams Dep. at 24). Any employee of the appropriate level may then apply for the job. (*Id.* at 89–90, 96). Williams said he would take applicants' performance evaluations and length of service into account when deciding among applicants. Wathen does not contend that Williams promoted another employee to a particular sixth-level position instead of her,[6] apparently because Wathen never applied for any posted job opening during the time in question; it seems she believed or Williams told her that a new position might be created for her. (¶¶ 26, 32, 34; Williams Dep. at 47, 59, 89–90, 96; Wathen Dep. at 26–27, 100–101). Williams contends that he did not promote Wathen because he did not believe her position entailed sixth-level or above responsibilities or that Wathen was performing sixth-level work, though he ad-

mits he believed she was capable of doing so. (¶ 68; Williams Dep. at 53, 60).

Frustrated with her situation, Wathen filed charges of gender discrimination with the Indianapolis Division of Equal Opportunity on February 9, 1996. (¶¶ 38, 70). She says that after Williams learned of the filing, he changed her employment evaluation to lower her score in the area of 'judgment,' but Wathen also acknowledges that Williams increased her rating in another category by an equal amount and that her overall rating of "superior" remained the same. (¶¶ 43–47; Wathen Dep. at 36–39). Williams denies that these modifications were motivated by Wathen's filing of discrimination charges and further denies that he even knew about the filing before he made the changes. (Williams Dep. at 62–63, 65, 70).

Meanwhile, Allison undertook a reduction in force, or RIF, to re-align workers' assignments with jobs that needed to be done. Many positions were eliminated or consolidated. (¶ 52; Williams Dep. at 83). Wathen's name appeared on one of several versions of an internal RIF list. (¶ 76; Williams Dep. at 76). Wathen implies that persons on this list were vulnerable to termination, while Williams testified that the list was not a final version and contained job *positions* that were being eliminated; many people on the list would never be laid off, and (as he told Wathen around the time of the RIF) Wathen's employment was never at risk. (¶¶ 51, 76;

5. Harris was an eighth-level manager with a B.A. in Economics and 20 years of experience in the HR field, who had also taken graduate courses in business management. (¶¶ 27, 29, 30). Allison disputes Wathen's contention, supported only by her own statements of opinion, that she was performing some of Harris' job responsibilities for him. However, we must at this stage of the case accept a plaintiff's assertions about her own job duties as true, even if they seem self-serving. Although Wathen offers only her own opinion and conclusions to demonstrate that she was indeed performing sixth and seventh-level work, we must accept her version of the facts as the non-moving party.

6. Admitting in response to ¶ 34 that she does not contend that Williams promoted another employee to a particular sixth-level position instead of her, Wathen adds some statements regarding coworkers with whom she has maintained she is similarly situated. However, Wathen clearly admitted to this proposition in her deposition. Q: "Now, you say 'if you would have got the promotion in 1995.' You don't contend that someone else was promoted to a particular position in your place; is that correct?" A: "No, no. I was supporting Randy, and I didn't want Randy's job, and I still don't want Randy's job. But as support for him, I was promised sixth level." (Wathen Dep. at 99–100).

Defendant's Rebuttal ¶ 17; Wathen Dep. at 37–38; Williams Dep. at 76). Wathen's HR position was eliminated in the RIF, but she was not terminated. (¶¶ 50, 52).

The Human Resources department lost three positions in the RIF in addition to Wathen's. (¶ 52). Wathen was informed that she could choose to remain in HR in a different, fourth-level position, retaining the same salary and benefits associated with her fifth-level HR position; or, she could transfer to another department and remain in a fifth-level position, also maintaining her then-current salary and benefits. (¶ 53). Wathen chose to interview and was selected for a fifth-level position in the Manufacturing Department. (¶ 54). After her transfer, Wathen performed well in Manufacturing and applied for and received raises and promotions. (¶¶ 18–19, 56, 61).

No one at Allison has ever made a discriminatory comment to Wathen or in her presence (¶ 37), but Wathen believes that Allison treated her unfairly in comparison to other employees. At her deposition, Wathen was asked about the basis for her discrimination claims. In support of her sex discrimination claim, Wathen cited the fact that she had been performing functions that were supposed to be done by Randy Harris, who had an eighth-level job. (Wathen Dep. at 26–28). When asked if there was anyone else to whom she compared herself, Wathen said that the company would compare her to "5th level girls that got increases during that time frame that I did not. But I myself want to rely heavily on the fact that what I was doing was outside the scope of a secretary. Therefore, I don't think that's a fair total comparison." (*Id.* at 28). When asked to whom *she* believed she was similarly situ-

ated ("Who you compare yourself to that you think they are similar to you, but were treated much better"), Wathen listed Bev Stewart, an "executive secretary," and Jennifer McGuire. (*Id.* at 28–29).

She confirmed that Stewart, Harris, and McGuire are people to whom she compares herself to support her age discrimination claim as well, though she acknowledged that Stewart is "just a year younger." (Wathen Dep. at 29). In addition, Wathen listed "the girl that replaced me, Nanette Wenclewicz." Around the time of the RIF, Wenclewicz assumed a third-level position in HR. (*Id.* at 30; Williams Dep. at 87). Wenclewicz was subsequently promoted as high as fifth or sixth level [7]. Wathen contends that Wenclewicz replaced her in HR: "Wathen trained Wenclewicz in various of Wathen's job duties before Wathen was transferred. After Wathen was transferred to the Manufacturing Department, Wenclewitz [sic] assumed the functions of Wathen's former Human Resources job that allegedly had been eliminated." (¶¶ 83, 84). Wathen bases this contention upon the fact that Wenclewicz had called Wathen and asked Wathen to guide her in doing certain tasks. (Wathen Dep. at 30).

However, Wathen also claims that Teresa Steppe (D.O.B.1–26–60) "replaced Wathen when Wathen was transferred to the Manufacturing Department" and "earns only $17 less a month then Wathen" even though she has 33 fewer years of seniority. (Pl.'s Opp. Def's Mot. Summ. J. at 4; ¶ 89). For the reasons discussed below, we find it difficult to determine exactly who, if anyone, Wathen claims replaced her in HR. Wathen has not distinguished between the *position* she held in

---

7. The evidence differs regarding what level-position Wenclewicz occupies in HR. We believe this is due to Williams' lack of certainty about the matter at his deposition; he guessed level six. (Williams Dep. at 88). In her deposition, Wathen, too, was unsure of Wenclewicz's level (Wathen Dep. at 30). Defendant admitted that Wenclewicz was level six in its Response to Plaintiff's Statement of

Additional Material Facts ¶ 83, but added in its Rebuttal Facts that Wenclewicz "was never promoted to a fifth-level secretarial position" in HR. (Rebuttal ¶ 13). Taking the evidence in the light most favorable to Wathen, we will assume that Wenclewicz is currently in a sixth-level position. However, it is undisputed that when Wathen left HR in 1996, Wenclewicz was in a third-level position.

HR as opposed to the *duties* she performed. In any event, she has not alleged that the job still exists as it did before her transfer in the RIF.

Wathen claims Allison 1) discriminated against her because of her age by denying her a promotion in HR to level six or higher and/or failing to create such a position for her, by forcing her to choose between demotion or transfer as a result of the RIF, and by replacing her with a younger employee; and 2) retaliated against her for filing discrimination complaints by forcing her to choose demotion or lateral transfer as part the RIF.

*Summary Judgment Standard*

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted if the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The moving party may meet its burden of demonstrating the absence of a triable issue by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 2552, 2554, 91 L.Ed.2d 265 (1986). The party opposing a well-supported summary judgment motion may not simply rest on the pleadings, but must respond affirmatively with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, courts construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.1999). If enough evidence exists for a jury to find for the plaintiff on an issue of material fact, the defendant's motion will be denied; but, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. Neither "the mere existence of some alleged factual dispute between the parties" nor "some metaphysical doubt as to the material facts" will sufficiently establish a triable issue. *Forman v. Richmond Police Dept.,* 104 F.3d 950, 957 (7th Cir.1997) (quoting *Anderson,* 477 U.S. at 247, 252, 106 S.Ct. 2505); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment." *Butler v. Consolidated Rail Corp.,* 31 F.Supp.2d 1098, 1102 (S.D.Ind.1998) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

*Age Discrimination*

■ To prove age discrimination under the ADEA, the plaintiff must establish that the complained-of employment decision would not have been made but for the employer's intentional age-based discrimination. *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 396 (7th Cir. 1997). Plaintiffs may offer direct evidence to show an employer acted with discriminatory intent, which can take the form of a decision-maker's admission or of circumstantial evidence (such as discriminatory remarks). *Id.* However, discrimination is rarely blatant and may therefore be difficult to prove using direct methods. As a result, courts have adopted the now-familiar *McDonnell Douglas* burden-shifting formula to evaluate situations in which plaintiffs can offer only indirect proof of discrimination. *Id.,* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under *McDonnell Douglas,* the plaintiff has the burden of establishing a prima facie case of discrimination, the elements of which can vary depending upon the type of harm alleged. *See Butler v. Consolidated Rail Corp.,* 31 F.Supp.2d 1098, 1103–4 (S.D.Ind. 1998). Once the plaintiff creates an inference of discrimination by making out a prima facie case, the burden shifts to the

defendant to rebut the inference by offering a legitimate, non-discriminatory reason for its actions. *Chiaramonte,* 129 F.3d at 399. If the employer does so, the inference of discrimination dissolves and the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is actually a pretext or lie. *Id.* If the plaintiff can raise a question of fact as to whether the defendant really believed its given reason, the case must proceed to trial. If not, defendant is entitled to summary judgment. *Id.*

## I. *Prima Facie Case*

Although discrimination cases follow a general pattern of proof, the factual circumstances of each case determine what elements form the prima facie case of discrimination. In all cases, the first element a plaintiff must show is that he is a member of a protected class. *Ghosh v. Indiana Dept. of Environmental Management,* 192 F.3d 1087, 1091 (7th Cir. 1999). In age discrimination cases, the plaintiff must show she is over 40 years of age and therefore within the class protected by the ADEA. *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 398 (7th Cir.1997). Next, depending upon how the employer's discrimination took effect, the plaintiff must show she suffered adverse treatment or that others were treated more favorably, due to the employer's discriminatory animus. The remaining elements of a prima facie case of discrimination depend upon the form of discrimination alleged, whether it be adverse action, such as demotion or termination, or failure to provide a benefit (e.g., hiring, promotion, training). *See Gadsby v. Norwalk Furniture Corp.,* 71 F.3d 1324 (7th Cir.1995) (discussing permutations of *McDonnell Douglas* prima facie case).

 In a failure to hire or promote case, the plaintiff should show she was qualified but not hired for the position, and that the position either remained open or was filled by someone significantly youn-

ger. The age variation must be substantial, for it is the degree of difference, rather than the disparate treatment of persons within and without the protected class, that allows an inference that age was a motivating factor in an employment decision. *Richter v. Hook–SupeRx, Inc.,* 142 F.3d 1024, 1028 (7th Cir.1998). The Seventh Circuit presumes that a difference of ten years is significant; a gap of less than ten years may be considered significant if additional factors reveal that the age difference mattered to the employer in making its decision. *Id.* at 1028–29.

It is unclear whether a plaintiff claiming failure to promote or hire must also establish that there was an available position, and that she indeed applied for that position. This requirement provides decision makers with a clear basis for comparison from which to infer discrimination. Still, the prima facie elements are not inflexible and "will inevitably vary" depending on the "type and circumstances of employment action under attack." *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 523 (7th Cir.1994) (citing *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824). The requirement that a plaintiff prove she "actually applied for the post allegedly wrongly refused reflects standing-like concerns" and "closes the causal gap between the employer's decision making process and the complained-of condition of the employee." *Id.* (citations omitted). However, this requirement is not written in stone:

> The factual setting of a dispute, not an abstracted formulation never intended to be all things to all cases, will determine what steps a plaintiff needed to have taken in order to sufficiently demonstrate that discriminatory decision making may have actually affected his employment situation. For instance, where an employer ordinarily entertains applications for a certain type of job but a plaintiff is deterred from applying by the very discriminatory practices he is protesting yet can show that he would have applied had it not been for those

practices, a sufficient preliminary link between discrimination and adverse consequence is established.

25 F.3d at 523 (citing *International Broth. of Teamsters v. United States*, 431 U.S. 324, 362–371, 97 S.Ct. 1843, 1868–73, 52 L.Ed.2d 396 (1977); *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 867 (7th Cir.1985)). *See also Bailey v. Northern Ind. Pub. Serv. Co.*, 910 F.2d 406, 410–411 (7th Cir.1990) (where application process meant expressing interest in position and plaintiff did not show he applied for or was interested in an available position, claim could proceed if evidence showed discriminatory policy made any application futile).

■ The prima facie case also varies slightly among situations where the employee was terminated or demoted. In age discrimination cases, a plaintiff who has been discharged or demoted may establish a prima facie case by showing the employer replaced her, or replaced her with someone substantially (at least ten years) younger. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 889–90 (7th Cir. 1997). If a demotion or discharge occurred in the course of a reduction in force (RIF), however, the plaintiff normally cannot show replacement or replacement by a younger person because her job no longer exists. *Id.* at 889. She must then demonstrate that the employer treated younger employees more favorably in the RIF, for example, by allowing younger employees to perform the discharged older employee's work or work that the discharged older employee was qualified to do. *Id.* at 889–890.

■ To establish a prima facie case of retaliation, Wathen must show she engaged in protected behavior and suffered a materially adverse employment action on account of the behavior. *Pafford v. Herman*, 148 F.3d 658, 670 (7th Cir.1998). Alternatively, plaintiff might try to establish she was treated less favorably than those who had not engaged in protected behavior, and that the defendant's prof-

fered legitimate explanation (if any) of the less favorable treatment is a pretext for the retaliatory motive.

## II. Pretext

As explained above, the establishment of a prima facie case triggers the defendant's obligation to put forth some legitimate (nondiscriminatory or nonretaliatory) reason for its behavior. Once an employer has provided such an explanation, the burden then falls to the plaintiff to demonstrate that the employer's proffered reasons are pretextual—"either lies or completely lacking in factual bases." *Ghosh v. Indiana Dept. of Environmental Management*, 192 F.3d 1087, 1091 (7th Cir.1999) (citing *Mills v. Health Care Service Corp.*, 171 F.3d 450, 458 (7th Cir.1999)). To avoid summary judgment being granted for the defendant, a plaintiff must "produce evidence from which a rational trier of fact could infer that the defendant lied about its proffered reasons for failing to promote him [for example] or that the reasons had no basis in fact." *Id.*

The legitimate reason proffered by a defendant to explain its action need not have been a sound business judgment; courts will not sit as "super-personnel" departments serving to second-guess the employment decisions made by businesses. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Even a foolish or trivial rationale will suffice as long as it is not improper or based on discriminatory factors. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir.1999).

■ A showing by the plaintiff that her employer lied about the reason for its action may support an inference that the employer's real motive was improper. *Jackson*, 176 F.3d at 984 (citations omitted). A plaintiff may prove the defendant's proffered justification for the employment action is pretextual either directly, by showing that a discriminatory (retaliatory) basis more likely than not motivated the employer, or indirect-

ly, by demonstrating that the excuse is unworthy of belief. *Id.* at 983. According to Seventh Circuit opinions, an explanation is unworthy of credence if it 1) has no basis in fact; 2) did not actually motivate the action; or 3) was insufficient to motivate the action. *Id.; Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 931 (7th Cir.1996); *Mechnig v. Sears, Roebuck and Co.,* 864 F.2d 1359, 1364–65 (7th Cir.1988) (citations omitted). *See also Collier v. Budd,* 66 F.3d 886, 892 (7th Cir.1995) (reciting factors, noting summary judgment motions in employment discrimination cases approached with "added rigor" because central issues are credibility and intent, and quoting *Courtney v. Biosound,* 42 F.3d 414, 418 (7th Cir.1994): "Affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.")

### Discussion

### I. PRIMA FACIE CASE

#### A. Discrimination

Because Wathen presents no direct evidence of discrimination, she must establish the existence of a prima facie case using indirect proof under the burden shifting method. We find it doubtful that she can sustain even the light burden imposed by the prima facie case; in fact, the confusing nature of her allegations makes it challenging to determine exactly which test to use. Although Wathen has labeled her claims as failure to promote and retaliation, we find it difficult to apply the standard elements of those claims to plaintiff's allegations because she has not clearly enumerated the acts upon which she bases her age discrimination suit.[8]

Significantly, Wathen never heard a discriminatory comment made at Allison; instead, she bases her claims on a series of comparisons between different Allison employees and herself. She does not contend that the other employees were promoted into positions that she wanted, though she seems to feel that Allison 'replaced' her with younger workers, which is irrelevant to a failure to promote claim. Wathen argues that Allison's discrimination "can be inferred from the fact that Wathen was performing work substantially beyond her level five rating and pay, while similarly-situated younger secretaries were promoted to higher positions and were being paid higher ages [sic]." (Pl.'s Opp. Def.'s Mot. Summ. J. at 8). Elsewhere, Wathen concludes similarly situated younger employees received raises and promotions "at her expense" without pointing to any specific instances where this was the case. The evidence to support Wathen's theories consists of a recitation of employee names, current salaries, position numbers, and seniority, presenting an extremely limited amount of select information about a few of Allison's 4000 employees. Unfortunately, the data (setting aside the fact that it may not all be reliable, as it has not been clearly authenticated) is incomplete and Wathen's comparative examples are somewhat confusing; some data in her salary comparison chart contradict statements in her briefs and fact statements.

Wathen has trouble making out the traditional prima facie case for failure to pro-

---

8. For example, Plaintiff's Second Amended Complaint alleged she "has been required to perform job duties above her job description as a secretary since 1990." (Compl. at 10). Wathen also alleged that her "job description as secretary included duties that are compensated at a higher level than what Plaintiff received, and Defendant refused Plaintiff's request to compensate her for the duties she performed above the required duties of her job." (Compl. at 11). She concluded that "Defendant intentionally discriminated against Plaintiff because of her age," and its "intentional and unlawful employment actions have harmed Plaintiff, and violated her rights as protected by the [ADEA]." (Compl. at 17–18). Beyond this, Wathen's Complaint offered no information about how her age affected Allison's treatment of her—not that younger workers were performing the same duties and being paid more, or that younger workers were performing fewer duties and being paid more than or the same amount as she received.

mote because she cannot show there was an open position for which she applied and was rejected, nor that a younger person was promoted instead of her to a particular position. Wathen does not allege a single position for which she applied (or that she merely desired) but for which a younger worker was chosen. Nor does she allege that she was deterred from applying for any position by Allison's discriminatory policies. *See Clark v. Commonwealth Edison Co.,* 1998 WL 603123, at *4–5 (N.D.Ill. Sept.4, 1998) (failing to establish existence of open position for promotion is failure of prima facie case; employer not obligated to create position at plaintiff's request).

■ Wathen believed that Williams, a white male five years her senior, discriminated against her on the basis of age, sex, and race because of his failure to promote her to a sixth-level position, despite his promise to do so. (¶ 32). The age of the supervisor or alleged decision maker is relevant to deciding whether or not discrimination has occurred. *Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 572 (7th Cir.1998). There is an inference that someone within the protected group would not discriminate against group members, although we recognize that the presumption is rebuttable. *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 152 (7th Cir.1996).

In addition, Wathen fails to demonstrate that the younger employees she has listed are in any way similarly situated to her. We cannot discern vital information about them, such as their departments or supervisors.[9] For the employees who, like Wathen, have been promoted from level five to level six, Wathen provides no information about the relative timing (i.e. before or after Wathen's promotion) of the employees' promotions. While she lists years of seniority, she does not say how long the other employees were in their previous positions before promotion, or how long they have been at their current levels. They could have been promoted to level six after Wathen, as far as we can determine from the information presented, so it is impossible to infer that Allison treated them more favorably than it did Wathen with respect to promotions.[10] Finally, it is clear from Wathen's testimony that even Wathen did not consider herself to be similarly situated to the other secretaries at her level,[11] which is why she still felt maltreated even though she was the highest paid fifth-level secretary in HR.

Wathen has pointed to three employees in particular, Bev Stewart, Jennifer McGuire, and Nanette Wenclewicz, with

9. In addition, Wathen provides no information about their comparative education, qualifications, or quality of performance, as well as many other factors which would affect pay levels and the positions that would be available. What are the job duties of these women? Do they have different job titles? Do people occupying the same title in different departments perform the same functions? Do different departments have different budgets for personnel? How many people total are in which positions in what departments? Wathen's contention that she is similarly situated with these employees also assumes an identity among departments in their secretarial pay and promotion schedules, a uniformity that she has not shown to exist. Even secretaries within the same department may have had different supervisors; there is no evidence that these women had the same supervisor or that decisions regarding their employment were made by the same person.

10. This lack of dates to show the timing of promotion also renders the information useless to show discrimination during or after the RIF. See additional discussion below.

11. See, e.g., Wathen's deposition testimony (discussing why she withdrew an earlier discrimination charge): "... I knew that the facts presented to her, probably, were on the basis of people that were 5th and 6th level, and that wasn't my complaint, it was the fairness in me doing some 8th level functions and not getting 6th. I wasn't wanting her to compare me with strictly with the 5th and 6th level girls, but functions beyond that, even. So I withdrew it knowing she couldn't help me on the basis of her rules." (Wathen Dep. at 110–111).

whom she believes she is similarly situated, but the information she provides about them is confusing (there is no key to explain the codes contained in the employment data) and sometimes contradictory. For example, she claims McGuire was born in 1973, when her own chart purporting to summarize employment data reveals McGuire was *hired* in 1973, and was actually born in 1953, making her less than ten years younger than Wathen. She says McGuire currently holds a sixth-level position and out earns Wathen by $58 per month. (¶ 35). In addition, Stewart[12] is two years younger than Wathen: like McGuire, not so much younger that the difference would be considered significant without accompanying evidence of age discrimination. Wenclewicz (born in 1964) is the only one of the three 'similarly situated' employees who is significantly younger than Wathen. Apparently, we are to infer age discrimination from the fact that Allison hired Wenclewicz in 1996 but promoted her to a sixth-level position after only three years. However, too many variables would dictate discrepancies in the current salaries of Wenclewicz and Wathen to allow an inference that age discrimination has caused the difference, which, in any account, is not striking. Under Wathen's theories, which assume that age and seniority are the only factors that determine salary, an older employee who has been with the company longer should be at a higher level and paid more than someone younger—even if their jobs are different and the younger person has more total

work experience or is otherwise more qualified.[13]

Wathen argues that she has made her prima facie case because "she was transferred on the stated ground that her job was being eliminated, and her duties were assumed by younger and less senior employees. And she earns less than similarly situated younger and less senior employees." (Pl.'s Opp. Def.'s Summ. J. at 6–7). Whether Wathen contends that her HR position was *eliminated* is unclear. If she believes it was eliminated, we would employ the RIF version of the prima facie case, which requires a showing that younger employees were treated more favorably in the RIF. However, Wathen also alleges that she has been 'replaced' by younger workers, which implies that her job was not eliminated; replacement by a younger worker constitutes an element of the prima facie case when the plaintiff has been fired or treated in an adverse manner (i.e., demoted) in a non-RIF situation.

█ In order to prevail upon claims arising in the RIF context, the plaintiff must show the employer treated younger employees more favorably than the plaintiff in the RIF, for example, by allowing young people to remain in their jobs while forcing older employees to accept a less favorable alternative, such as a reduction in pay or status. Wathen claims Allison forced her to choose between remaining in HR and accepting a demotion, or transferring to Manufacturing and remaining in a fifth-level position. Wathen has not al-

---

**12.** Both Stewart and Wathen appear to have held 6D positions (though in different departments at different times), and Stewart's minimum, median, and maximum numbers at 6D pay grade are slightly higher than Wathen's 6D numbers. However, we cannot tell exactly what the numbers mean, and cannot determine if they should or should not vary according to department, position, and performance rating. Even assuming the data shows Stewart was earning more money while at the 6D pay level, this information would not show that her experience, performance, or duties were similar to Wathen's.

**13.** If we accepted Wathen's premise that she should earn more than all younger employees with less seniority, without ensuring that they are similarly situated in department, job level, functions, etc., absurd results would follow. A newly hired CEO, age forty, with twenty years experience outside the company, would be paid less than a sixty-year old secretary who has served the company for ten years. *See Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir.1997) (holding that listing of birth dates of individuals retained in RIF, without more, such as job descriptions, requirements, or qualifications, cannot be evidence of age discrimination).

leged there was anything less favorable about the Manufacturing position, just that she would have preferred to stay in HR. However, not every employment action that displeases an employee is actionable. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996).

Wathen has not claimed and has not shown that Allison treated younger people preferentially in the RIF. Three other positions in HR were also eliminated, but no information has been presented about the ages of the employees who held those positions, nor their fate in the RIF. Wathen's allegations that Allison 'replaced' her are unclear, because at some points she says her job was eliminated in the RIF, but elsewhere maintains that Wenclewicz was "performing the functions of" her job that was eliminated, or that Steppe replaced her. Even if some of Wathen's former duties were subsumed by other positions in HR after the RIF, it does not indicate that Allison 'replaced' Wathen, unless after the RIF one person was performing the exact same HR job as Wathen had been before the RIF.

■ We remain uncertain whether Wathen is alleging that Wenclewicz assumed her exact job position, because Wathen maintains that Wenclewicz was brought into HR at level three, but bases her complaint upon the fact that she held a fifth-level HR position while performing duties at seventh-level and above. If Wenclewicz truly replaced Wathen, then Allison treated Wathen more favorably, because it paid Wathen a fifth-level salary to perform seventh-level functions, while it only paid Wenclewicz a third-level salary to do the same job. In addition, Wathen cannot contend that Wenclewicz was treated better she, given that Wathen was offered a choice to remain in HR at a level *above* Wenclewicz, but she did not want to accept a demotion to level four (though her pay and benefits would have been unchanged).

■ Regarding the other person whom Wathen claims replaced her, the evidence shows that Teresa Steppe replaced Wathen in Manufacturing after Wathen was promoted, so Wathen cannot seriously claim Allison treated Steppe better. In fact, Allison arguably treated Wathen better than Steppe, who is younger: not only was Wathen promoted to a higher (level six) position than Steppe (who then filled the fifth-level job vacated by Wathen), but Steppe was paid less than Wathen had been to do the exact same fifth-level job.

■ We decline to find that Wathen has established an inference of discrimination. It is apparent that Wathen feels unfairly treated, and perhaps she was. Assuming it is true that Allison asked her to perform eighth-level functions at a fifth-level rate and that Williams broke his promise to promote her to level six, Wathen has presented no evidence from which we can infer that Allison or Williams was acting on a discriminatory basis. There is no evidence whatsoever that her age had anything to do with her job classification, failure to get the promotions she believed she deserved, or treatment during and after the RIF.

### B. Retaliation

■ The first element of a case for retaliation, that Wathen engaged in protected activity, is undisputed: she filed official complaints of discrimination. However, as a matter of law, Wathen cannot establish that she suffered an adverse employment action, nor can she demonstrate a connection between what she claims was an adverse employment action and the protected activity. Wathen was transferred to another department in Allison's RIF, but was paid the same amount, received the same benefits, etc., and had potential for advancement; she ultimately received a promotion and at least two raises. *See Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996) (holding purely lateral transfer, with no demotion or pay reduction and "no more

than a minor change in working conditions" cannot be materially adverse employment action.) Nor does the alteration of her performance evaluation serve as proof of retaliation. Though Williams lowered her score in one area of her evaluation, he increased the score in another category by the same amount, so that her final score was the same. A negative performance evaluation, standing alone, is not a materially adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996).

She has not shown that she was treated poorly in the RIF, or that any poor treatment was because she filed discrimination charges. In addition, Wathen cannot point to differential treatment of those who did not engage in protected activity, because she fails to differentiate promotions or employment actions affecting other employees that took place *before* her first EEOC complaint, from those that occurred as part of or after the RIF.[14]

## II. PRETEXT

Though we find that Wathen has failed to establish a prima facie case, it would not be necessary to decide Allison's motion upon that basis. Even if facts necessary for the prima facie case are in dispute, we may advance to an ultimate issue in summary judgment analysis. *Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir. 1999) (quoting *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149 (7th Cir.1996)). For argument's sake, the Court will assume that Wathen's mere scintilla of evidence (the fact that in a company of 4,000 employees, one secretary who is significantly younger than Wathen was promoted to the same level over a fewer number of years, than she) has made her prima facie case. Allison has offered legitimate business justifications for its actions, including the supposed disparate treatment cited by Wathen, and for its failure to promote her, which justifications have not been rebutted.

With respect to Williams' failure to promote Wathen in HR, Allison maintains that 1) Wathen never applied for a higher-level position during the time about which she complains and 2) there were no openings available during the relevant time. As a regular practice, Allison posted positions for which there were openings, accepted applications from employees, and awarded promotions after considering education and training. Allison adds that Wenclewicz, for example, received an HR promotion because she *applied* for an opening listed by the company, a job for which Wathen, too, could have applied. Wathen has pointed to no open position that she wanted or applied for during the time she worked in HR. Nor does Wathen offer as an excuse for her failure to apply for an open position that her employer's discriminatory practices deterred her from applying. Williams has asserted that he did not promote Wathen because she was not doing sixth-level functions; he felt that the level (five) designated for the job she occupied was appropriate. Wathen offers nothing to contradict Williams or to suggest that he is lying about his motives. Williams' admission that he believed Wathen was capable of performing sixth-level work in no way contradicts his assertion that he did not believe she had sixth-level and above responsibilities when she worked for him in HR.

As for its treatment of Wathen in the RIF and afterward, Allison says that it needed to cut costs and consolidate its workforce. Wathen's was one of several jobs eliminated in HR. Her job description had admittedly changed over the years, and restructuring was called for. She had expressed dissatisfaction with her ability to progress in HR. Because it wanted to retain Wathen, Allison offered her a choice so that she could either stay in HR at a lower level job or transfer and remain at level five. Either way her salary and benefits would not be affected. Al-

14. See fn. 10 and accompanying discussion of problems with Wathen's comparative data.

lison contends that there was no motive to punish Wathen for her discrimination charges, nor to discriminate against her due to her age, and that it in fact was attempting to accommodate her and treat her well in light of her desire to have a potential for advancement (she was already the highest paid secretary at her level in HR, and the potential for advancement in Manufacturing may have been greater).

 Allison explains that it did not demote Wathen in the RIF and that she was not actually replaced in HR after her transfer. Instead, her duties were divided among the newly created positions in HR, along with those duties that had belonged to others whose jobs were eliminated. Wathen presented no evidence that the cutbacks in HR resulted from Allison's desire to discriminate or retaliate against her, especially given the undisputed evidence to the contrary: the company had been undergoing structural changes in an effort to downsize and cut costs.

In response to Wathen's allegations that it 'replaced' her with a younger worker in Manufacturing, Allison points to the undisputed fact that it had to replace Wathen because she had been promoted to a higher level position, and that her younger replacement was paid less than Wathen had been paid to perform the exact same job.

Even if we were to find that Wathen had somehow experienced a materially adverse employment action, as discussed above, there is no reason to doubt Allison's contention that it treated her as it did because of budget concerns. Wathen has not successfully challenged Allison's grounds for any of its actions. There is no issue of suspicious timing to suggest a causal link between Wathen's lodging of complaints and any of the actions she views as retaliatory, with the exception of the performance evaluation, which did not change her overall rating or affect her employment status in any way. Wathen's own statements, opinions, and allegations cannot create a genuine dispute about whether the reasons offered by Allison are lies or lack a basis in fact, or that Allison did not honestly believe its own explanations. *Roberts v. Separators, Inc.*, 172 F.3d 448, 452 (7th Cir.1999).

*Conclusion*

For the foregoing reasons, the Court GRANTS Allison's motion for summary judgment on all Counts (I and IV, as well as II and III as discussed above) of Wathen's Complaint.